## MIDDLE DISTRICT,

### 1857.

————o————

## COUNTY OF KENNEBEC.

————o————

### William M. Hovey *versus* Ephraim Mayo.

Where an existing street or road is dug down to the injury of the owner of land adjoining, it is not an *alteration* within the meaning of the statute, which will entitle him to damage. If a surveyor of highways dig down a street or road with discretion, and not wantonly, no action can be maintained against him therefor, either at common law or by statute, when acting under legal authority.

Where a new power is given by statute, and the means of executing it prescribed therein, the power must be executed accordingly. A corporation having power to raise money for the repair of highways, may make compensation therefor in the material taken from the same in the process of making the improvement.

But whether they can do so to the injury of the owner of the adjoining land, where the record by which the power is given shows the sole purpose to be for the benefit of the individual making the removal, may well be doubted.

A corporation having the power to determine what repairs should be made in its roads and streets, may, through its officers, acting within the scope of their authority, exercise their own judgment, which cannot be set aside by a jury in a suit at law.

Hovey *v.* Mayo.

A street commissioner, or one acting under him, cannot be made liable for the *purposes* of the city council while acting under an order passed within the scope of their authority, or for his own purposes in the proper execution of the order.

EXCEPTIONS were taken to the rulings of MAY, J., presiding at *Nisi Prius,*

This is an action on the case against the defendant for digging down the street in Hallowell in front of the plaintiff's house and lot.

Thomas Hovey testified that he knew the premises where the plaintiff lives, on Water street, in Hallowell; it is about twenty rods north of Hathaway's store at the foot of Winthrop street; a story and a half or one story house, perhaps twenty by forty feet, stands four feet from the line of the road and the end to the road; the house stood up two or three feet higher than the street before the street was cut down; the access to the house was easier then than now; the defendant told the witness that Stoddard cut down the street for the benefit of the city wharf, but did not say how much it was cut down; witness thinks it was cut down two or three feet; the cutting was from eight to ten feet from the house; the plaintiff had no mode of getting to or from the house for all purposes whatsoever, except to or from Water street; that he is city clerk of Hallowell, and read from the records of the city the election of the defendant as street commissioner, March 14, 1853, and oath administered April 4th, 1853, and bond approved the same day; also the vote of the city of Hallowell ordering the grading of this street, passed July 22, 1853; also the vote of the city council assuming the defence of this action.

Plaintiff then was called as a witness, and testified. I was not at home when the grading was done, but I had a talk with defendant; I asked him what he thought they had damaged me; he did not answer distinctly; I then asked him if they had not damaged me one hundred dollars; he said yes, and more too; the second time I asked him he said he did not think it was right for him to specify the sum; he said it

was done under the authority of the town; he was authorized to give Mr. Stoddard liberty to cut down two and a half feet; I asked him if he was there all the time; he said he was not but a part of the time; he said he could not say how deep Stoddard had dug, whether deeper than the vote or not; he did not say he gave any directions about the cutting, and said nothing about supervision over the work; it was all finished when I came home; do n't know how deep the cut is, but should think three feet; he said the dirt was used to build the city wharf.

Ephraim Mayo, defendant, called for defence. The city gave Stoddard a right to grade the street not exceeding two and a half feet, at the deepest cut; he did grade it about that depth; I made marks in the bank before he begun, and tested the cut afterwards by these marks, and found it two and a half feet in the deepest; there was a space of only three to five rods cut so deep as this, and then tapered off each way; I did not direct or authorize Stoddard to cut more than two and a half feet anywhere; the cut was four or five rods long, averaging two and a half feet. I told him he might cut so deep, and directed the manner in which he must leave it; told him what the city had authorized me to do, and he might cut so deep; there was no place in front of plaintiff's house more than two and a half feet deep; the dirt was carried to the city wharf.

E. K. Butler, called by defendant. There was a rise in the road between Hathaway's store and the railroad bridge, and by the grading, this rise was leveled down; before the alteration the westerly gutter was filled up, and the road was about level across from plaintiff's house towards the river.

Plaintiff offered the vote of the city council of July 2, 1853, which was rescinded by the vote of July 22, 1853, and referred to in said last vote; defendant objected to its admission, but the court admitted it.

Upon the foregoing evidence the defendant's counsel contended that there was no such remedy as the plaintiff had

pursued in this case, but he must seek his remedy under the statute of 1846, chap. 216; but the court for the purposes of this trial did not so rule, but instructed the jury as hereinafter stated.

The defendant's counsel also requested the following instructions:

1st. That if they find that the grading was in accordance with the vote of the city council, then the defendant is not liable in this action, but the plaintiff must pursue his remedy under the statute of 1846. This requested instruction was not given.

2d. That if the grading was deeper than the vote of the city council authorized, and they find that defendant did *not* authorize or direct such deeper grading, then the defendant is not liable for such deeper grading. This instruction was given as requested.

3d. If the controlling part of the purpose of the city council in ordering the grading of this street was to improve it, although they might also wish to aid in the construction of the city wharf, that vote would furnish a justification to the defendant. This instruction was given as requested.

4th. That if the city authorities see fit to reduce the grade of any part of the highway, it is not necessary that the earth taken away, and every portion thereof, shall be used in some other portion of the highway; but any part of the earth may be disposed of as may be convenient or profitable to the city. This instruction was given as requested.

The jury were instructed that if they believed, from the evidence in the case, that the defendant told Mr. Stoddard that he might cut down the street in front of the plaintiff's dwelling house, and said Stoddard, in pursuance of such permission, did cut down and grade the street under the direction and superintendence of the defendant, and the defendant knew when he gave such permission that such grading and cutting was for the purpose of enabling said Stoddard, or the owners of the city wharf, so called, to take the

earth for their benefit, and not for the purpose of improving and repairing the street, then this action may be maintained. But if the said defendant had no knowledge that the cutting and grading was to be for the benefit of the said Stoddard or the owners of the city wharf, and all that he did or consented to have done was done in the discharge of his duties ·as street commissioner, and for the purpose of improving or repairing the street, then this action could not be maintained.

And the jury were further instructed, that if they should find that the purpose of the defendant, as street commissioner, was to improve or repair the street, the fact that other persons were to be benefited by it, or that the earth taken from the street was to be appropriated to the building of a˙ wharf for the benefit of individuals, would not render the defendant liable in this suit, and he would not be liable; but if, on the other hand, the purpose of cutting down the street was to enable Stoddard or other persons to cut it down for the sake of taking away the earth for their private purposes, because such digging and cutting was thought not to be injurious to the public travel or street, and the defendant gave permission to Stoddard to dig and cut it down for his own benefit, or for the benefit of others, and not for the improvement or repairing of the street, and it was done under his direction or superintendence, and such cutting and digging was to the injury and damage of the plaintiff as alleged, then the defendant is liable for the damage occasioned thereby, notwithstanding the authorities of the city of Hallowell may have authorized him by their vote to give such permission and to take the direction and superintendence of the work, and notwithstanding he did so while acting as street commissioner.

Other appropriate instructions were given, to which no exception was taken.

The jury found a verdict for plaintiff, and assessed the damages at one hundred dollars.

Hovey *v.* Mayo.

VOTES OF THE CITY COUNCIL.

*Resolved,* That the City Wharf Company be permitted, at their own expense, to grade Water street, between Winthrop street and the railroad crossing, and reduce the same to a level, provided they leave the same in as good condition and shape as it now is, to the satisfaction and acceptance of the street commissioner.

Passed July 2d, 1853.

*Ordered,* That Samuel Stoddard, the contractor to construct the city wharf, be allowed to grade Water street, in the vicinity of the Sager property, at his own expense, and under the direction and superintendence of the street commissioner, provided that said contractor shall indemnify the city against all claims for damages in consequence of such grading, and leave the street in as good shape and condition as it now is, and provided, also, that the greatest cut shall not exceed two and a half feet; and the order passed on this subject the second day of July, is hereby rescinded.

Passed July 22d, 1853.

*A. G. Stinchfield,* counsel for plaintiff.

The fee in the *locus in quo* is in the plaintiff, and the public have an easement only. Com. v. Peters, 2 Mass., 125; Fairfield v. Williams, 4 Mass., 427.

The public have no legal right to use the land for any other purpose than for mending the road. Robbins v. Bowman et. al., 1 Pick, 122.

If the soil is disturbed for any purpose other than to improve the way and to make it more convenient for public use, the owner of the fee may maintain an action for *trespass* against the person so disturbing the soil, as a wrong-doer. 21 Pick., 292.

The owner of the soil has a right to produce evidence before a jury to show the purpose of defendant in removing the soil, and to submit to them whether or not it was removed for the purpose of improving the public way and making

it convenient for public use, or otherwise. 1 Pick, 122; 21 Pick., 297; 6 Pick., 57.

If a surveyor abuse his authority by digging down or raising up where it is not necessary for the reasonable repair and amendment of the road, he is amenable to the party suffering, for damages. 1 Mass., 428.

" When land is appropriated to a highway, the right to the soil remains precisely the same as before—so much so that the owner may recover in ejectment. He has a right to the produce and all the profits above or under the ground, except only the right of passage." 2 Mass., 117, and case cited.

The common law remedy is not superceded by the statute of 1846. The statute is cumulative in its nature and the plaintiff has his choice of remedies. Gooch v. Stevenson, 13 Maine R., 371.

A verdict will not be set aside for excessive damages in cases of tort unless it clearly appears that the jury committed some gross and palpable error, or acted under some improper bias, influence or prejudice, or have totally mistaken the rules of law by which the damages are to be regulated. Whipple v. Cum. Man. Co., 2 Story's R., 661.

The order of July 2, 1853, was admissible, inasmuch as the same was referred to in the order of July 22d—and in order to show the purpose of the defendant in digging down the street.

*J. Baker,* counsel for defendants.

The verdict ought to be set aside, and a new trial granted.

I. Because prior to the statute of 1846, chap. 216, there was no remedy for such a case as this.

By right of eminent domain residing in every government, private property may be taken for public uses by that government or its officers, without any compensation, and the provision of the constitution is not the grant of a new power, but the limitation of one inherent in government itself. Cushman v. Smith, 34 Maine R., 247.

Hovey *v.* Mayo.

When this land was originally taken for this highway, compensation was made according to the constitution for all the damages present, prospective, and contingent, which might by possibility accrue to the owner of this estate from the right of a perpetual easement.   He has received his compensation therefor long ago, and has no just cause of complaint.   Callander v. Marsh, 1 Pick., 418; Brown v. Lowell, 8 Met., 172.

II.  When the statute provided a remedy where none existed before, it is the only remedy which any party can have, and the court should have given the first instruction requested.   Keene v. Chapman, 21 Maine R., 126; Mason v. Kennebec and Portland Railroad Company, 31 Maine R., 215–6; Bangor v. County Commissioners, 30 Maine R., 270, and cases.   1 Met., 138–9; 8 Met., 177; 12 Maine R., 385–8.

III.  But it will be said that the defendant was not in the lawful exercise of his authority as street commissioner, and therefore that statute does not apply.

This we deny.

1.  Because the statute is absolute, unqualified, and unlimited.   Its language is broad enough to cover all cases. It has no regard to motives or purposes, but the *fact*.   The fact in this case is within the scope of defendant's power. The street was defective, it needed repair, and it was repaired and improved.   All the acts he did were lawful in form.   They were all appropriate to an honest discharge of his official duty.   By what, then, is it pretended that they are rendered unauthorized and unlawful?   From a wrong purpose, an unlawful motive of the city council.   The statute of 1846 contemplates no such inquiry as this.   It deals with acts, not motives.   To interpolate any such restriction into it is judicial legislation, a usurpation of power, and changes the plain and obvious meaning of the law.

2.  Not only is such an inquiry beyond the contemplation of that statute, but it is one which this court has no right to make at all, for it involves an inquiry into the propriety and necessity of any repair or alteration in a public street.   This

22

question is conclusively and exclusively confided by law to the city council and the street commissioner, the same as the question of public necessity and convenience in laying out a highway, is to the county commissioners; and when they have determined it, whether right or wrong, no tribunal has a right to inquire into it. The presumption of law is in favor of all public officers. City Charter of Hallowell, Special Laws of 1850, chap. 413.

Adopt the rule contended for, and what injurious consequences would grow out of it. Acts of public officers in locating or altering streets which are within the scope of their authority, and appear to be legal, would be rendered *unlawful* by the secret and inscrutable motives of the officers, and there would be no security or permanency to any street; they would be all afloat.

The instruction as a matter of law, that the defendant would be liable if he knew that the purpose of the city council was to enable Stoddard to take the earth for the city wharf, was therefore erroneous.

IV. But suppose the court should decide that the purpose of the city council was open to inquiry in this case, and that the instruction of the court was right as a matter of law, then we contend that there was no such evidence of the wrong purpose, as to authorize the jury to find such a verdict, and therefore the verdict is against evidence, and the third requested instruction of the court. The only evidence in the case on this point, is the votes of the city council. They are not sufficient alone, and arrayed against them, we have the presumption of law in favor of public officers, and the fact that the street was defective before, and was improved by the alteration.

V. But if this inquiry into motives and purposes was an open and proper one, then the court was wrong in ruling out the question to Aiken. That would have lead to the best evidence on this point.

VI. But if the grading was unlawful on account of the purpose for which it was voted by the city council, then, in-

Hovey *v.* Mayo.

asmuch as the defendant did nothing but consent to Stoddard's doing what that vote authorized, he was the mere channel of communication between the city council and Stoddard, and is not liable here.

If the acts done by Stoddard were unlawful, the consent of defendant to his doing them under the vote, would confer no power on Stoddard, nor render defendant liable, and therefore the instruction of the court was erroneous. Green v. Portland, 32 Maine R., 431.

The plaintiff should look to Stoddard who did the acts, or to the city council which voted them to be done, and commanded defendant what to do.

VII. The damages are excessive, and against the instructions of the court; and the ruling of the court in excluding the question put to Aiken about the value of the property, was erroneous. The same acts done to a house worth $300, would not cause so much injury as to a house worth $3000. The damage must be in *proportion* to the value. The mere description of the house would give no adequate idea of its value, which depends mainly, in a place like Hallowell, upon its location.

VIII. The ruling of the court was erroneous in excluding the proof offered relative to the application of the plaintiff to the city for damages, and the reference of the claim and the action of the referees. It shows that he had selected his tribunal; that tribunal had assumed jurisdiction of the case by consent and agreement of the parties, and he should be bound by it, and estopped to waive it and seek a new remedy.

Motion to set aside the verdict for the plaintiff:

1. Because it is against evidence and the weight of evidence.

2. Because it is against law and the instructions of the court.

3. Because the damages are unreasonable and excessive.

TENNEY, C. J.    This is an action at common law, to re-

cover damages against the defendant, who at the time of the alleged acts was the street commissioner of the city of Hallowell, for digging down the street in front of the plaintiff's house and lot, to which it is admitted he had title.

The refusal of the court to give to the jury the instruction first requested for the defendant, and the general instructions given, authorize a verdict for the plaintiff in this action, upon certain findings of facts. Exceptions were taken by the defendant, the verdict being against him, for the refusal to instruct as requested, and to the instructions given unfavorable to him.

Where an existing street or road is dug down, to the injury of the owner of land adjoining, it is not an *alteration*, within the meaning of the statute, which will entitle the owner of land to damage. And if a highway surveyor or commissioner of streets dig down a street or road, with discretion, and not wantonly, no action at common law or under the general statute of the state can be maintained. Callender v. Marsh, 1 Pick., 416; R. S. of 1841, chap. 25, sec. 1, and ref.; Brown v. City of Lowell, 8 Met., 172.

It is a well established principle, that when a new power and the means of executing it are given, by statute, the power can be executed in no other way. Andover and Medford Turnpike v. Gould, 6 Mass., 40; Bangor House Proprietary v. Hinkley, 3 Fairf., 385; Boston v. Shaw, 1 Met., 130.

By the statute of 1846, chap. 216, the power is given to the owner of land, adjoining a road or street, in any city or town, to obtain damages, by reason of the road or street being raised or lowered, by any commissioner or surveyor of highways, and the mode is provided by which the damages can be recovered.

It is undoubtedly true, that this provision of the statute of 1846 does not extend to cases where the street or road has been cut down or raised by the commissioner or surveyor of highways, in a manner altogether unauthorized; but it contemplates a case where an injury is done to the proprietor of land adjoining the street or road, by the legal action of

the commissioner, &c., in cutting down or elevating the same.

No action can therefore be maintained against the defendant, for acts complained of, in causing or permitting the street in question to be graded, if these acts were caused or permitted in the exercise of an official discretion, and not wantonly. Whether they were done in the proper discharge of his duty as street commissioner, may depend in some measure upon the authority under which he may have acted. It appears from the arguments of counsel, as well as from the instructions of the judge at the trial, that the acts which were the foundation of the suit were subsequent to the votes of the city council of the 2d and the 22d of July, 1853. By the latter, the contractor to construct the city wharf had authority to grade the street, under the direction and superintendence of the street commissioner, subject to certain conditions, liabilities, and restrictions.

By sec. 4 of the city charter of Hallowell, the executive powers of said city generally, and the administration of police, with all the powers of the selectmen of Hallowell, shall be vested in the mayor and aldermen, &c. All other powers now vested in the inhabitants of said town, and all powers granted by this act, shall be vested in the mayor and aldermen and common council of said city, to be exercised by concurrent vote. By sec. 7, the exclusive power of laying out streets, &c., is given to the city council; and they shall in all other respects be governed by and be subject to the same rules and restrictions as are by law provided in this state, for the regulating of public highways and repairing streets.

By R. S. of 1841, sec. 75, towns may raise money as they may deem necessary, in making repairs upon highways and town ways, and the same shall be expended for such purposes, by the selectmen.

It follows from the provisions of the city charter and the general statute referred to, that the city council are authorized to raise money to repair streets, and to expend the same

in furtherance of that object. And the power to do so, and even to direct the street commissioner to cause streets to be graded, if done for the purpose of improvement, is not denied by the plaintiff's counsel. The city government having the power to raise money with which to repair streets and roads, it cannot well be contended, that they have not the power to make such repairs, when, instead of payment from the treasury therefor, compensation can be made from the materials taken from the street, in the very process of making the improvement.

It is insisted that the city council cannot allow earth to be removed from a street, to the injury of the owner of land adjoining, for the purpose of enabling the person making the removal to derive a benefit therefrom, and for this purpose only. It may well be doubted whether the city council have that power, when the record of the vote itself shows that such was the whole design. It has no power over the land of the street beyond that of making it in all respects what it regards as proper in a public street. But the grading of streets is often regarded as a process very material, in putting them in a condition to be safe and convenient for travelers. And in making the repairs in streets and roads, in the city of Hallowell, under its charter, the power is given to the corporation through its officers to determine what repairs shall be made; and so long as the city council therein act within the scope of its authority, its judgment cannot be set aside by a jury in a suit at law.

By the vote of July 22d, 1855, it is manifest that the city council designed that Water street should be *graded*. If the means contemplated in the order, by which this improvement was to be effected, was not illegal or beyond the power of the city government, it was obviously an order which they had authority to pass. Whether the vote shows an attempt to exceed the power conferred on the city council, is for the court to decide, from the votes themselves; and therefrom it is not perceived that it transcended its legal limits.

It is insisted that the city council had no authority to

permit Stoddard to cut down the street and to take the earth removed to the city wharf; and hence, that the defendant, in connecting himself with one without power to do the acts complained of, was a wrong doer. If the order to cause the street to be graded was passed, within the scope of the authority of the city council, it had the right to employ agents to carry it into effect; and Stoddard, being under the direction and supervision of the street commissioner could be employed as that agent as well as any other. And as we have seen, the mode of receiving compensation for his services in grading the street is no objection to his employment.

It was no part of the duty of the street commissioner, when acting under an order of the city council, passed within the scope of its authority, to judge of the object of that body, and as he found the object to be legitimate or otherwise, according to his own standard, to carry the order into effect, or to disregard it. Nor was the purpose of the street commissioner, in giving directions, and supervising the grading of the street and the removal of the earth to city wharf, to make him liable or not, where his action was confined to the execution of the order.

The conclusion is, that the instruction requested and refused, should have been given; and that the instructions unfavorable to the defendant were erroneous.

The question put to a witness, who was one of the aldermen of the city at the time of the order, as to his purpose in favoring the alteration in the street, was properly excluded. The purpose of one member of a corporation, may be a very different thing from the purpose of the corporate body, in passing an order, and the purpose of the order when passed under full authority, can have no legitimate effect upon the defendant when in the execution of the order, much less the purpose of one of the members of the board of aldermen. The question was properly excluded.

The value of the plaintiff's premises does not appear to be material in fixing the damage done to him. The trouble arising from the cutting down of the street, and the expense

of making the house and lot accessible therefrom, cannot depend upon the value of the premises. And there is nothing in the case tending to show that the injury to the premises was such that it was deemed necessary or expedient to abandon them. This question was improper.

*Exceptions sustained and a new trial granted.*