## WASHINGTON COUNTY v. JONES.

1. **Practice:** APPEARANCE: FAILURE TO MAKE. A party is not excused for failure to make appearance before a referee to whom the cause has been referred, after being served with notice, by the fact that he or his attorneys have been induced to believe that no trial would take place at the time designated in the notice.

2. ———: TRIAL BEFORE REFEREE. The report of a referee may be assailed by a motion to set it aside or by proper exceptions thereto, filed upon the coming in of the report, and it is not essential that exceptions be taken to errors occurring on the trial before him, if such errors appear of record.

3. **Clerk of the Court:** COMPENSATION OF: PROBATE BUSINESS. Prior to September 1, 1873, the Board of Supervisors was authorized to allow the clerk a reasonable compensation for services in probate matters, in addition to the fees then allowed him by law, but such compensation could not exceed the amount collected by him for probate business.

4. ———: ———: HOW TO BE PAID. The compensation of the clerk was limited to $2,000 a year, but this was to be paid out of the fees of his office, and if they were less than that amount exclusive of the fees collected for probate business, his compensation was correspondingly less.

5. ———: ———: LIMIT OF. Under the Code his entire compensation for all official services is limited to $2,000 per annum.

6. ———: ———: DEPUTY. He is entitled in addition, however, to such an allowance for the hire of a deputy as may be reasonable, in view of the amount of labor demanded by the duties of his office.

*Appeal from Washington District Court.*

THURSDAY, DECEMBER 14.

THIS action was commenced to recover an alleged balance of $5,000 which it was claimed was due the plaintiff for the failure of defendant to pay over and account for certain money which came into his hands as clerk of the District and Circuit

Courts. There was an answer and cross-demand filed by defendant, and there were substituted pleadings, and by consent of the parties the cause was referred and trial had before the referee, who made a report which was unsatisfactory to both parties. The court modified the report and rendered a judgment in favor of defendant for $529.58, and both parties appeal.

The further facts necessary to an understanding of the case appear in the opinion.

*Patterson & Rhinehart*, for plaintiff.

*McJunkin, Henderson & Jones* and *H. & W. Scofield*, for defendant.

ROTHROCK, J.—I. After the order of reference was made, and on the 2d day of December, 1875, the defendant served a 1. PRACTICE: notice on the chairman of the Board of Super- appearance: visors that the case would be called for trial before failure to make. the referee on the 16th day of the same month. The service of the notice was accepted in writing, and the chairman of the board informed plaintiff's attorneys that he had been so notified. On account of some conversation and negotiation between plaintiff's attorneys and defendant, said attorneys did not appear before the referee, and the cause was tried in their absence.

It was claimed in the court below, and is claimed here, that the report of the referee should be set aside, because the attorneys for the plaintiffs were misled by the statements of defendant, and made to believe that no trial would be had. There are a number of affidavits and counter affidavits on the question, which we need not discuss here.

It is sufficient to say that we think the attorneys of plaintiffs, and the chairman of the board, should have made an appearance for the county, notwithstanding all that it is claimed occurred between the parties.

II. The evidence which was introduced before the referee

is not all before us, and we can only determine the questions

<span style="float:left">2. ——: trial before ref- eree.</span> arising on the conclusions of law, accepting the facts found by the referee as true. This we will do without elaboration, and without a statement of the pleadings.

Defendant's counsel insist that plaintiff cannot be heard because no exceptions were taken before the referee. Exceptions are only necessary to make that of record which otherwise would not so appear. If the referee erred in his conclusions of law, advantage may be taken thereof by motion to set aside the report, or by proper exceptions thereto filed upon the coming in of the report.

III. The referee found that defendant was entitled to $2,000 per year for six years services as clerk of the District and Circuit Courts, being from January, 1869, to January, 1875. For services in probate matters from January 1st, 1869, to September 1st, 1873, $2,520, being at the rate of $540 per year, and for deputy hire from September 1st, 1873, to January 4th, 1875, $920.

It was found that defendant had received District and Circuit Court fees, $8,926.09; probate fees, $1,269; marriage licenses, $1,263.75; and in county warrants, $2,531.58. This statement of account left a balance due to defendant from the county amounting to $1,449.58. The District Court deducted the item for deputy hire and rendered a judgment against the county for $529.58. It was found as a fact that the probate fees actually received for the whole period were $1,269. To make up the average of $540 per year, the amount allowed for the probate business, the referee added the marriage license fees and probably the amount of probate fees uncollected.

We held in *Peet v. White*, 43 Iowa, 400, that fees earned and charged belong to the clerk who earns the fees without reference to the time they are collected. That case, however, was peculiar in its facts. The Board of Supervisors had fixed the amount of compensation to the clerk, including his deputies, at the amount of the whole of the fees of the office whatever they might be. In this case it appears, from the fact

that the clerk received quite a large amount in county warrants, that the board based his compensation on the idea that he should not be allowed any fees which might be collected after the expiration of his term of office.

We think there was no error in allowing the defendant a reasonable compensation for his services in probate matters up to September 1st, 1873. Chapter 134 of the Acts of 1868 provides that the clerk shall receive such compensation as the Board of Supervisors may allow, which shall be in addition to the fees and amount then allowed by law to said clerk. Before that, the total amount of compensation for all official services could not exceed $2,000.

3. CLERK of the court: compensation of: probate business.

The transaction of the probate business was an additional burden put upon the clerk, for which it was the duty of the board to make a reasonable and fair compensation. But the act of 1868 also provided that such compensation should be paid out of the money collected by the clerk for probate business. It could not then, in this case, exceed the sum collected during the time it should be allowed. The amount collected was $1,269 for the whole period of six years. How much was collected prior to September 1st, 1873, we are unable from the record before us to determine.

IV. The limit of a clerk's compensation prior to September 1st, 1873, was $2,000, exclusive of the amount allowed by the board of supervisors for probate business; but while it was limited to $2,000, if the fees of the office did not amount to that sum exclusive of probate fees, the whole compensation might have been less than $2,000. Section 432 of the Revision provided that the compensation should not exceed the sum of $2,000 for all official services, and if the total amount of fees received in any one year should be deemed by the board as inadequate compensation for the services rendered, the board might allow such additional compensation as they might deem just.

4. ——: ——: how to be paid.

This was not intended to enlarge the whole compensation beyond $2,000. The provision allowing additional compensa-

tion was only applicable in cases where the fees did not amount to $2,000.

After the enactment of chapter 134 of the laws of 1868, the clerk was entitled to compensation for probate business in addition to the fees and amount then allowed by law. In counties where the fees of the office actually received during the year, excepting probate fees, amounted to more than $2,000, the excess was required to be paid into the county treasury. The clerk in such case was absolutely entitled to receive the $2,000 for his compensation, and an additional amount for services in probate matters which was to be fixed by the board. But in counties where the fees of the office, aside from the probate fees, did not amount to $2,000, the compensation for probate business might be allowed, and yet the whole compensation be $2,000 or less.

For example, if the ordinary fees received amounted to $1,200, it was discretionary with the board, under Sec. 432 of the Revision, whether they would allow additional compensation for ordinary services. Suppose they should allow $300 for such services, and then allow $500 for the probate business, the whole compensation would be $2,000, and the clerk could claim no more.

V. Section 3784 of the Code provides that the total amount of compensation of the clerk, *for all official services*, shall 5. ___: ___: not exceed the sum of two thousand dollars in any limit of. one year. Section 3783 provides that the board of supervisors may allow compensation for services in probate matters, to be paid out of the fees collected for probate business. But this section does not provide that this compensation "shall be in addition to the fees and amount now allowed by law," as is provided in chapter 134, laws of 1868. The total amount, then, which can be allowed a clerk for his personal services, since September 1st, 1873, is two thousand dollars per annum, and it may be less if the ordinary fees of the office do not amount to that sum.

VI. Section 433 of the Revision provided that the clerk should furnish at his own expense all necessary deputies. This section was not re-enacted in the Code. Section 417 of

the Code of 1851 provided that "When a county officer receiv-
ing a salary is compelled by the pressure of the
business of his office to employ a deputy, the county
court may make a reasonable allowance to such deputy."

6. ——: ——:
deputy.

In *Bradley v. Jefferson County*, 4 G. Greene, 300, it was held
that the county must pay a reasonable compensation for the
necessary services rendered, and that such payment was not dis-
cretionary. That was a case where a county treasurer employed
a deputy and paid him, and then made claim against the
county for the amount paid, and it was held that he could
recover.

Section 648 of the Revision and section 771 of the Code are
the same in substance as section 417 of the Code of 1851. In
our judgment, then, a clerk is entitled to such reasonable dep-
uty hire as the pressure of the business of his office demands.
It is proper to say that the question as to whether the treas-
urer was an officer "receiving a salary" was not determined
in *Bradley v. Jefferson County, supra*, and whilst it is true
that the clerk receives his compensation from the fees of his
office, yet such compensation cannot exceed two thousand
dollars, and the effect of the law is such as to leave it to be
fixed by the board of supervisors within certain limits, and it
is practically a salaried office.

VII. It is proper to observe that it appears from the cross-
demand of defendant that before filing the same he presented
it to the board of supervisors for allowance, which was refused.

No question is made in the argument of counsel as to the
right of defendant to maintain the action upon his cross-de-
mand. It is in the nature of an original action. Whether
it can be prosecuted as an original action we do not determine,
as the question is not before us.

VIII. We have thus given what we believe to be the true
construction of the statutes fixing the compensation of clerks
of the District and Circuit Courts. All the questions deter-
mined seem to arise in this case. We have pursued our own
method in the order in which we have passed upon the ques-
tions, as tending to greater brevity than would be attained in
following the assignment of errors presented.

In conclusion it may not be improper to say that it is a matter of regret that the law as to the compensation of a public officer is in such a state of uncertainty as to be the source of litigation in some instances, and in nearly all the counties of the State a matter of doubt and embarrassment with boards of supervisors..

The cause will be reversed and remanded for a new trial, each party to pay one-half the costs in this court.

REVERSED.