[No. 1882.  Decided July 25, 1895.]

ASAHEL DILLON, *Respondent,* v. WHATCOM COUNTY, *Appellant.*

COUNTY OFFICERS — EMPLOYMENT OF CLERKS AND DEPUTIES — COMPEN-
SATION — AUTHORITY OF COUNTY COMMISSIONERS.

Where the law fixes no compensation for clerks and deputies of a public officer, they must be paid by the officer who employs them, instead of out of the public treasury.

Under §§ 2973, 3003, Gen. Stat., the county commissioners, and not the county officers, are vested with discretionary power to fix the number and compensation of employes in the various county offices.

Where the county commissioners, being vested with discretionary power to pass upon the necessity of employing help in a county office, have examined into and passed upon the matter by exercising the discretion reposed in them by law, the courts have no power to review the conclusion reached by the commissioners.

*Appeal from Superior Court, Whatcom County.*

*G. V. Alexander,* and *J. R. Crites,* for appellant.

*Bruce, Brown & Cleveland,* and *Kerr & McCord,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—Respondent brought this action against appellant, the county of Whatcom, to recover the sum

of $300 alleged to have been paid out by him for clerk hire and salary of deputy in his office as county auditor for the month of April, 1895. He alleges in his complaint that he was compelled to retain in his office three clerks, Dillon, Bateman and Custer, and the deputy, Brand, in order to dispatch the duties of his said office during said month; that the county commissioners of defendant county had attempted to discharge all the clerks in his office after April 1, 1895, and had reduced the salary of his deputy to $5 per month; that he made an agreement with his said deputy and clerks to the effect that if the county refused to audit and allow their salaries he would pay them himself; that the county did refuse to pay said claims when presented to it, and that he thereupon, in compliance with his agreement, paid his deputy and clerks and took an assignment of their said claims; that J. J. Bell, sheriff of Whatcom county, had been compelled, in order to discharge the duties of his office, to retain in his employ as his deputy one W. I. Brisbin, and had made an agreement with him similar to the one made by the auditor with his employes, and that said claim of Brisbin and the sheriff had been assigned to the plaintiff. The said claims were duly presented to the county commissioners, who refused to audit and allow the same, whereupon an action for their recovery was commenced.

Defendants interposed a demurrer to plaintiff's complaint, which was overruled. Appellant thereupon answered, denying all the allegations of plaintiff's complaint, except paragraph 1, which was the allegation of the official standing of the plaintiff and of the defendants; and set up affirmatively the orders made by the county commissioners wherein it was determined by the commissioners that the clerks hired by

respondent were not needed in the auditor's office, nor the one hired by the sheriff, in his said office, and they refused their consent to the employment of any clerks in said offices after the 1st day of April, 1895; said order being also based upon the additional ground that the defendant county had reached its limit of indebtedness under the constitution, and had no power to contract further indebtedness, particularly for the hire of said clerks. Other affirmative defenses were pleaded, but as we view the case their discussion will not be involved in this opinion. A trial was had by a jury, and judgment rendered in favor of the plaintiff for the amount demanded.

The first proposition discussed by the appellant would go to the merit of the demurrer to the complaint, and it is insisted that the rule is well settled that, where a public officer claims a compensation for official services he must show either a statute authorizing such compensation or a contract with some one who has authority to bind the county from which compensation is claimed; that if he cannot show a contract with some one authorized to bind the county, then he must show, first, a statute authorizing him to receive such compensation for such services and fixing the amount thereof; and, second, a statute authorizing the county commissioners to pay for such services out of the county treasury.

This contention seems to be directly sustained in *State, ex rel. Holman, v. Roach, Auditor*, 123 Ind. 167 (24 N. E. 106). This was a suit instituted to compel the auditor of a county to draw his warrant on the county treasurer for certain moneys alleged in the complaint to be due the appellant as surveyor of said county. The complaint set up the necessity for the work done by his deputies and the necessity for their

employment, and while the court held in that case that under the statutes he was compelled to do the work himself for the compensation provided, it announced the rule formulated above as having been the rule uniformly adopted by that court, and closed with the statement that:

"It is believed to be the universal rule that, where the law fixes no compensation for deputies, they must be paid by the officer who employs them, and not out of the public treasury."

In *Severin v. Board of Commissioners*, 105 Ind. 264 (4 N. E. 680), the same rule is substantially announced, and the court in closing the opinion says:

"The auditor had no right to proceed, granting the soundness of his own theory, without consultation with the commissioners. It was not for him to decide for himself that the work ought to have been done by his predecessor, and that the county must pay him for doing it. The county auditor's power is hardly so autocratic as to permit him to make and enforce such a decision."

In the case of *Board of Commissioners v. Harman*, 101 Ind. 551, the court again announced the rule that an officer could not successfully claim compensation for services unless there was a statute providing that he should receive remuneration. To the same effect is *Bynum v. Board of Commissioners*, 100 Ind. 90.

Mechem on Public Officers, in § 855, declares the doctrine to be that the relation between an officer and the public is not the creature of contract, nor is the office itself a contract, so that the right to compensation is not the creature of contract; that it exists, if it exists at all, as the creation of law, and, when it so exists, it belongs to the officer "not by force of any contract but because the law attaches it to the office;"

and that the most that can be said is that there is a contract to pay him such compensation as from time to time may be by law attached to the office. And, as a deduction from this, it is asserted by the author that, "unless, therefore, compensation is by law attached to the office, none can be recovered;" that "a person who accepts an office to which no compensation is attached is presumed to undertake to serve gratuitously," and that "he cannot recover anything upon the ground of an implied contract to pay what the service is worth;" making distinction between the compensation of an officer and of a person other than an officer who undertakes to render services for a municipal corporation as its private agent, in which case he can recover the reasonable value of the services.

But whether or not the demurrer should have been sustained, we are satisfied that upon the complaint and answer no judgment should have been granted to the plaintiff, for it appears from the answer that the county commissioners had exercised their discretion and had decided that the services of these employes were not necessary.

Before proceeding further with this argument, it would be well, perhaps, to revert to the law governing this discretion and see wherein it is lodged. Sec. 2973 of the General Statutes, after providing for the election of county officers and establishing their salaries, provides further that, "in all cases where the duties of any office are greater than can be performed by the person elected to fill the same, said officer may employ, with the consent of the county commissioners, the necessary help, who shall receive a just and reasonable pay for services," further providing that "the officer appointing such deputies or clerks shall be responsi-

ble for the acts of such appointees upon his official bond." It is contended by the respondent that this section vests the discretion in the officer to appoint, and that in fact it becomes his duty to appoint, the permissive language of the act under the circumstances to be construed as mandatory. Were there no other section of the law governing appointments of deputies and hiring of other help, there might be some plausibility in this contention, but § 3003 seems to vest the discretion and throw the burden of determining the necessity of such appointments entirely upon the board of county commissioners, for it provides that, "in case the salaries herein provided for are, in the judgment of the board of county commissioners, inadequate for the services required of the officers named herein, then the said board of county commissioners may allow such officer a deputy, or such number of deputies as, in their judgment, may be required to do the business of such office in connection with the principal, for such time as may be necessary, and at such salary as they may designate."

It is contended by the respondent that these two sections should be construed in *pari materia;* but even construing them thus, it would seem that the statute went no further than to allow the officer to name the employe, when it had been determined by the board of commissioners that such employment was necessary. Inasmuch as the officer is responsible on his bond for the delinquencies of the appointee, this is no more than a fair provision of the law. But we think that it cannot go beyond this. The whole question of employment outside of the person of the employe seems to be submitted to the judgment of the board of county commissioners by language which is inconsistent with any other thought than that of direction by the com-

missioners.   In  the  first  place, it provides that if the
salary, "*in the judgment of the board,*" is  inadequate;
and as indicating the vesting of discretion no stronger
words could be used.   Again, "the said board of county
commissioners may allow such officer a deputy."    The
word "allow" naturally conveys the idea of permission
upon the part of the county commissioners; not of con-
sultation or agreement or a division of responsibility,
but  purely  a  permission.   Again, the  law  provides
further that  as  to  the  number of  these  deputies the
judgment of  the  board  of  county  commissioners is to
be exercised, and  it specially provides that the salary
of such  help shall  be  such a salary as the board  may
designate.

It would seem that absolute discretion could not be
vested in a tribunal if it has not been vested in the
board  of  county  commissioners  by  this  section, so
far as the  hiring  of  extra help  for  county officers is
concerned.   And outside of the construction which we
would  be compelled to place upon it from the language
of the  law  itself, the  authorities, it  seems  to us, are
uniform  on  this  proposition.   Before  proceeding  to
their investigation, in view of some  authorities which
have been cited by  the respondent, it is well to notice
this  distinction  which  we  think  is  frequently  lost
sight of in the discussion of such cases, viz., that the
courts will interfere to compel inferior tribunals to act
or to exercise their discretion in proper cases when
such tribunals claim that under the law they have no
right to act, the question of whether or not they have
a right to act being a legal question which the courts
will solve for the tribunals; but this must be distin-
guished from a case where the legislature has empow-
ered the tribunal with discretion and such tribunal
has exercised that discretion.   In such a case the

courts have no right to substitute their judgment for the judgment of the tribunal in which the discretion has been vested; and we think an investigation of the authorities will show that in all well considered cases this distinction has been steadily kept in view. In this case, this discretion having been vested by the legislature in the board of county commissioners, and the question as to the necessity of this extra help having been submitted especially to their judgment; and, as shown by the answer, they having exercised their judgment and arrived at a conclusion, such a conclusion is final and not subject to review by the courts. As was said by the court in *Board of Commissioners v. Barnes*, 123 Ind. 403 (24 N. E. 137), "the source of their power is the statute, and the standard by which it is to be measured is that supplied by the legislative enactments." Measured by this standard it is the duty of the commissioners to employ extra help for these officers when in their judgment it becomes necessary so to do.

The Revised Statutes of Indiana provide that when in the opinion of the county commissioners, the public convenience shall require a bridge over any watercourse, they shall cause the same to be erected; and place the time and manner of constructing such bridges in the discretion of the board. In *State, ex rel. Fry, v. Board of Commissioners*, 125 Ind. 247 (25 N. E. 286), it was held that the statute conferred such discretion on the board of county commissioners that it was not within the power of the court to control the same. In *State, ex rel. Shryer, v. Board of Commissioners*, 119 Ind. 444 (21 N. E. 1097), it was held that the question, whether to rebuild a bridge or to devise some other means of crossing a stream, is within the discretion of the board, under a section of the statute which pro-

vides that the board shall repair or build bridges over any watercourse, whenever, in their opinion, the public convenience demands it; and the court in commenting on the case says:

"How can it be said that the county commissioners may only cause a bridge to be repaired in case, in their opinion, the public convenience requires it, if it is within the province of the courts to compel them by mandate to repair, even though, in their opinion, the public convenience does not require it?    . . . There is no proposition more firmly settled than that, where official action depends upon the exercise of the judgment and discretion of the officer, courts cannot interfere to dictate how the officer shall act, or what judgment he shall give."

In *Board of Commissioners v. Davis*, 136 Ind. 503 (26 N. E. 141), under an act which fixed the salaries of the judges of the circuit and superior courts, providing that in certain circuits, on certain representations, the salary of the judge should be increased in a sum specified, such board should consider such petition and hear evidence thereon, and that "such board 'may' allow a certain sum as an increase of salary of such judge, and that any such allowance, and the proceedings in relation thereto, if in compliance with the act, shall be final and conclusive;" it was held that the power of the board to increase such salary was discretionary and an appeal would not lie from its action.   It is true that the language used there, "that such proceedings shall be final and conclusive," does not appear in our statute, but the language of our statute, it seems to us, renders the language as final and conclusive as though the specific words were used.

In *City of Richmond v. Davis*, 103 Ind. 449 (3 N. E. 130), it was held that a taxpayer could maintain an in-

junction to restrain the corporate officers from making an investment that would surely result in the loss of the money invested, but that an injunction could not lie to restrain the exercise of discretionary powers. The rule is thus laid down by Mechem on Public Officers, § 968.

"The same principles apply to official boards and bodies as to individual officers — the performance of clear and definite duties of a ministerial nature will be compelled, but discretion will not be interfered with nor will doubtful or uncertain duties be required."

In discussing the question of when the writ of mandamus would issue, the author says:

"But the writ will not be granted to control the lawful judgment or discretion of such boards or bodies in fixing the compensation of officers, in passing upon claims against the political bodies which they represent, in passing upon the sufficiency of bonds, or in letting contracts."

The supreme court of Michigan, in the case of *Cicotte v. County of Wayne*, 59 Mich. 509 (26 N. W. 686), in an opinion rendered by Judge CAMPBELL, in construing an article in the constitution substantially like our statute in regard to the discretion of the board of supervisors and the board of auditors, held that where the said board had exercised their discretion, such discretion was conclusive.

In the case of *Jacobs v. Board of Supervisors*, 100 Cal. 121 (34 Pac. 630), the supreme court of California decided that, under the provision of the constitution providing that water rates should be fixed annually by the board of supervisors, or other governing body of said city and county, by ordinance or otherwise, in the manner that other ordinances or legislative acts or resolutions are passed by said body, "grants to the

board of supervisors of the city and county of San Francisco the sole power to fix the water rates in such city and county," and as the fixing of water rates requires the exercise of discretion and judgment, and, as the board has exercised its discretion, it cannot be compelled to change its judgment or to take further action.

In the case of *Hovey v. Mayo,* 43 Me. 322, it was held that "a corporation having power to determine what repairs should be made in its roads and streets, may, through its officers, acting within the scope of their authority, exercise their own judgment which cannot be set aside by a jury in a suit at law;" and in *Danielly v. Cabaniss,* 52 Ga. 211, that "when a town council is authorized by law to do a particular act at its discretion, the courts will not control this discretion, and inquire into the propriety, economy and general wisdom of the undertaking." And so in this case, while it might appear to the court as a matter of public policy that great evil and inconvenience would result from an injudicious or mean policy on the part of the county commissioners, yet the discretion having been vested in them and the business interests of the county, which also involve personal interests, having been submitted to them by a vote of the people constituting them their agents to do this business for them, reposing confidence in their judgment and integrity, the people must abide by their own action in selecting these agents and the courts are powerless to relieve them from the results of their own bad judgment in such selections.

It is contended by the respondent that, these statutes being enacted for the benefit of the public, in which third parties have an interest and the rights of individuals are involved, the legislature, to guard these

26—12 WASH.

interests and recognizing or foreseeing the evils consequent upon the inability of the officer elect to discharge all the duties of the office, clothed such officer with the authority to employ help; but in an abundance of caution lest such officer might be remiss in that regard, they clothed the commissioners with the power, if the officer failed to exercise it when necessary, to employ this necessary help; and it is insisted that where a power is thus granted and the necessity arises it must be exercised. We think the general rule goes to the extent that in the construction of public statutes the word "may" is to be construed *must* in all cases where the legislature means to impose a positive and absolute duty, and not merely to give a discretionary power; and the intention of the legislature must be gathered, in an enactment of this kind, as in any other case, from the language used in the whole act. To sustain the contention that in this case the word "may" is used in an imperative sense, respondent cites Mechem on Public Officers, § 593. There the author says:

"Authority to perform acts of public concern is often conferred in language which, in form, seems to be permissive only, leaving it to the option of the officer whether he will act or not, and the question arises whether the imposition of the authority creates an implied duty to exercise it."

And the rule is there announced as laid down in *King v. Barlow*, 2 Salk. 609, that "where a public body or officer has been clothed by statute with power to do an act which concerns the public interest, or the rights of third persons, the execution of the power may be insisted on as a duty; though the phraseology of the statute be permissive merely and not peremptory."

An examination of the cases cited by the author,

however, to sustain the text shows conclusively that they do not apply to statutes like ours. Thus, in *Mayor v. Furze*, 3 Hill, 612, the act of the legislature had made it lawful for a municipal corporation to make and repair sewers, and the corporation had appointed an officer to attend to this matter. A person injured by a defective sewer brought an action against the corporation and the court held that the language used in the statute in that case should be construed to be imperative, and that the corporation were not at liberty arbitrarily to withhold it.

Another case was where an indictment was found against the inhabitants for refusing to meet and make a rate to pay the constable's tax, the statute saying that they "may meet," etc.; and the case of *King v. Barlow*, *supra*, where churchwardens were indicted for not making a rate or assessment under a statute where the language was that they shall have power and authority to make a rate; and similar cases where there was no fact to be ascertained, the ascertainment of which was left by the statute to the judgment of the tribunals. Sutherland on Statutory Construction, § 461, also cited by respondent, is to the same effect. The author there cites the same cases with others of a like character.

We think that the ordinary meaning of the language must be presumed to be intended unless such construction would manifestly defeat the object of the provision. It will be conceded, of course, that the word "may" is ordinarily used in a permissive sense; in fact, outside of legal language, it is universally used in the potential mood, signifying liberty or permission, and outside of the fact that it is a most excellent idea by courts to give to words employed by the legislature their ordinary lay meaning, for it is such mean-

ing that is comprehended by and acted on by the ordinary legislator in the performance of his official duties, there is nothing in the statute in question to indicate that the legislature meant to impose a positive and absolute duty, or that it meant to do anything more than to submit this question to the best judgment of the commissioners; not only by the permissive word "may" but by the use of the phrase, "in their judgment," and other qualifying permissive words and phrases.

A case relied upon by the respondent and one that is cited by Sutherland in the section noted above, is that of *Supervisors v. United States*, 4 Wall. 435, where it was decided that where power is given by statute to public officers in permissive language, as that they *may*, if deemed advisable, do a certain thing, the language used will be regarded as peremptory where a public interest or individual rights require that it should be. The statute in question was as follows:

"The board of supervisors under township organization, in such counties as may be owing debts which their current revenue, under existing laws, is not sufficient to pay, may, if deemed advisable, levy a special tax . . . to be assessed and collected," etc., and applied "in liquidation of such indebtedness."

And the supreme court of the United States held that such statute was intended to be imperative. But from the cases cited by the court and referred to by the attorneys in their arguments and briefs, we conclude that this case is not opposed to the conclusion which we have reached, that in cases where a fact is to be ascertained by the board the court will not interfere with its discretion in the ascertainment of such fact, and its action based upon such ascertainment. The attorney who was urging the mandamus in that case

insisted that the argument for the plaintiff was based
on the mistaken idea of what discretion was.   "An
examination of authorities," said he,  "will show that
disputed facts are necessary to found a 'discretion' or
a 'deliberative judgment;'" citing the distinguishing
case of *People v. Superior Court of New York*, 5 Wend.
114, so that this case was considered by the court in
the announcement of its decision, and was evidently
one of the cases referred to by the court in its closing
remark that, "the line which separates this class of
cases from those which involve the exercise of a dis-
cretion, judicial in its nature, which courts cannot con-
trol, is too obvious to require remark.   This case
clearly does not fall within the latter category;" and
the reporter, by star citation, refers to *People v. Superior
Court, supra*; *People v. Superior Court*, 10 Wend. 284;
*People v. Vermilyea*, 7 Cowen, 393; and *Hull v. Super-
visors*, 19 Johns. 260 (10 Am. Dec. 223).   An investiga-
tion of these cases will show clearly that the United
States supreme court evidently distinguished the case
which they had under consideration from the cases
cited, and from the case at bar.

In the case of *People v. Superior Court*, 5 Wend. 114,
it was decided that the discretion, the exercise of
which by inferior tribunals or officers that court
would not regulate or coerce, was that discretion which
was not and could not be governed by any fixed prin-
ciples or rules, viz., that the court would not interfere
to regulate the question of compensation of certain
public officers where a board of supervisors was author-
ized by law to allow such amount as it should judge
reasonable, citing many cases; and the court said:

"We will not set up our judgment in opposition to
the judgment of a board of supervisors, as to what is a
reasonable compensation for services performed by a

constable for the public, no sum having been fixed by
law.    It is their judgment and discretion, and not ours;
to which the legislature have left the decision of that
matter."

It will be hard to find a case that is more clearly in
point than this particular one.    But, continuing, the
court says:

" But if they refuse to allow *anything*, either on the
ground that they have no discretion upon the subject,
or that the officer has no right to compensation, then
we will interfere and determine whether they have the
power to make an allowance, or whether the officer is
entitled to be paid.    The powers of the supervisors
and the rights of the officer are questions of law.
They are legal powers and rights if they exist at all;"
citing *Bright v. Supervisors*, 18 Johns. 242, and *Hull v.
Supervisors*, 19 Johns. 260 (10 Am. Dec. 223)."

This confirms the rule that was outlined by us above,
that a distinction must be drawn between cases where
officers refuse to act, and where they do act but such
action is deemed to be wrong.

In *Commonwealth v. County Commissioners*, 5 Bin. 536,
the statute provides that the officer shall make out a
certain account which account after being examined or
revised he shall present to the county commissioners,
who, if they approve thereof, shall draw their order on
the county treasurer for the amount, which he is di-
rected to pay out of any moneys in the treasury; and
the court in that case, in a case against the commis-
sioners, said:

" The law has vested the commissioners with the
power of approving or disapproving of the account
and we cannot take it away from them."

And in *People v. Supervisors of Albany*, 12 Johns.
414, the statute directed the supervisors to allow a
constable for certain services so much money *as the*

*supervisors shall judge he reasonably deserves to have.* On motion for mandamus to allow a certain sum claimed, the court said:

"Should we grant a peremptory mandamus what would be its command? Certainly not to allow any specific sum; that would be taking upon ourselves a discretion which the legislature have vested in the supervisors. We could only command them to examine the applicant's accounts, and in the words of the statute, allow him, for his services such sum as they shall judge he reasonably deserves to have; and this has been already done. Wherever a discretionary power is vested in officers, and they have exercised that discretion, this court ought not to interfere, because they cannot control, and ought not to coerce that discretion. . . . This may be a hard case, and the party may be remediless; but that consideration cannot induce us to grant an unfit, and, as I believe, a nugatory remedy."

And so we think, without further citation, that all the authorities, when they are properly discriminated, will hold that where a question of fact has been submitted to an inferior tribunal, and that tribunal has exercised its discretion in determining such fact, such determination would be held conclusive by the courts.

Counsel for the respondent relies very largely upon the case of *Carr v. State, ex rel. Stewart,* decided by the supreme court of Indiana May 23, 1887, 111 Ind. 101 (12 N. E. 107). There it was held, under a section of the Revised Statutes of Indiana providing that the clerical duties of the bureau of vital and sanitary statistics should be provided for by the secretary of state, by the appointment or employment of a suitable clerk for that purpose, upon requisition of the state board of health, approved by the president thereof; that the secretary of state could not remove an appointee made by a previous secretary of state, the court hold-

ing that under the particular provisions of that stat-
ute, after he had been selected, designated or named
by the secretary of state, he had no further connection
with such secretary in any way, was not subordinate
to him, rendered no services in his office, and was not
dependent upon him for his salary, wages or com-
pensation; the statute declaring that the secretary of the
state board of health and not the secretary of state
should be the superintendent; that he must agree
with the state board of health for his salary, wages or
compensation for his services, to which board alone
he was authorized by law to look for his compensation.
Altogether a different proposition from the one an-
nounced in our statute which provides, first, that the
deputy or additional help shall only be employed if in
the judgment of the board of county commissioners it
is necessary; and second, that they shall be paid such
salary as the county commissioners may designate.

It is contended by the respondent that, in any
event, the officers might employ and recover of the
county, and that when such employment was made the
county was liable for the moneys thus expended; and
a number of cases are cited to sustain this contention.
The first is *Harris v. Chickasaw County*, 77 Iowa, 345
(42 N. W. 313). This is an Iowa case and the code of
that state provides that, when a county officer receiv-
ing a salary is compelled by the pressure of the busi-
ness of his office to employ a deputy, the board of
supervisors may make a reasonable allowance to such
deputy. It was held that a county treasurer may
employ a clerk to assist him temporarily without the
authority of the supervisors, and they may be com-
pelled to make a reasonable allowance for such clerk.
This is an altogether different statute from the one
under consideration. The discretion as to the neces-

sity for employing the deputy seems, by the language
of that statute, to have been vested in the officer, and
under the general rule, no discretion having been
vested in the supervisors as to the necessity for such
employment, the word "may" is construed to be im-
perative.

The case of *Gamble v. Marion County*, 85 Iowa, 675
(52 N. W. 556), is also an Iowa case, and the action
arose under the same statute and was based upon the
particular language of that statute, and simply follows
the case of *Harris v. Chickasaw County, supra*.

The spirit of the decision in *Roberts v. People*, 9 Colo.
458 (13 Pac. 630), it seems to us is rather against
the contention of the respondent. There the question
raised was whether or not the claim constituted a
*legal charge* against the county. The court said that
the rule governing the allowance of claims by the
board of county commissioners was that the authority
must be found in the statute, either in express words
or by fair implication. In other words, in order to
bind the county, the county commissioners must act
within the scope of their authority. In this case it
was claimed that the county commissioners had exer-
cised their discretion wrongfully in allowing the claims
in question, and the court said:

"But the compensation for every legitimate charge
against a county is not fixed by statute, nor even ex-
pressly provided for. It is therefore within the func-
tions of the board of county commissioners, in such
cases, to allow reasonable compensation. The county
commissioners represent the county, and have charge
of its property, and the management of its business
concerns. They are necessarily vested with reason-
able discretion in the administration of county affairs."

And all that was really decided in that case was that
the services upon which the claim was based were

beneficial to the county; that the county commissioners had so found, and that it was a proper charge against the county.

The determination of the question whether a charge is a proper charge against the county is a legal proposition, and that of whether the employment of the service is necessary as a fact is entirely another proposition. The courts will determine the first but will not enter upon the investigation of the latter when the discretion has been submitted to another tribunal. This distinction has been observed and maintained by the courts ever since the establishment of the judiciary, and was clearly and distinctly stated by Lord Ellenborough in *King v. Justices of Kent*, 14 East, 395. There a petition was presented to the justices of Kent at their general quarter-sessions, from certain persons stating themselves to be millers in that county, and within the description of millers mentioned in a statute which provided in substance that the justices, upon petition, should regulate their wages; and the sessions refused to act upon the petition, not upon the theory that these millers should not have their wages raised under the circumstances, but upon the theory that they had no jurisdiction to interfere in the case of these petitioners, for the reason that they apprehended that the statute was confined, not in the terms of it, yet by construction and in practice, to the wages of laborers in husbandry, and did not comprehend millers. Lord Ellenborough, in rendering the opinion, said that if the justices had rejected the application in the exercise of the discretion vested in them by the legislature, the court would not interfere, but if they had rejected it on the ground stated, that they had no power to grant it, the court would interfere so far as to set the jurisdiction of the magistrates in

motion, by directing them to hear and determine upon the application; and he observed that it was evident that the magistrates had never exercised their discretion at all upon the question, whether the application was fit to be granted, or not, but appeared to have considered that they had no jurisdiction to hear it. In conclusion he said:

"We do not, however, by granting this mandamus, at all interfere with the exercise of that discretion which the legislature meant to confide to the justices of the peace in sessions; we only say that they have a discretion to exercise; and therefore they must hear the application; but, having heard it, it rests entirely with them to act or not upon it, as they think fit."

Now, if the language of our statute were that the commissioners may determine upon application whether the necessity for this extra employment existed, and they should refuse upon such application to enter upon an investigation of that question, then the rule invoked by the respondent would be applicable. But here not only such is not the statute, but it affirmatively appears by the answer of the board that they did enter upon the investigation of the question presented and affirmatively found that the employment was unnecessary on account of the small amount of business being transacted in the county.

Other questions are involved in this answer, viz., the right of the commissioners to employ under any circumstances, on account of the alleged indebtedness of the county beyond its constitutional limitation, and if this were the only question involved, then, under many of the authorities cited by respondent, the findings or conclusions of the commissioners might be reviewed by this court, because they are questions of law and not of fact.

The same principle was announced in *Hull v. Supervisors*, 19 Johns. 259 (10 Am. Dec. 223), where it was held that the question of jurisdiction could not be reviewed, but that if subordinate public agents refused to act or entertain the question for their discretion, in cases where the law enjoined upon them to do the act required, the court would enforce obedience to the law by writ of mandamas, where no other legal remedy existed, and the distinction laid down by Lord ELLENBOROUGH, in the case above cited, was noticed by the court.

"The question," said the court, "now presented, is, whether the supervisors were bound to audit and allow the account, as a county charge. If it be a legal claim, then we have no doubt of our jurisdiction to instruct and guide the supervisors in the execution of their duty, by mandamus; not to control their discretion in judging what is a reasonable compensation for such services, but to compel them to admit the claim as a county charge, and to exercise their discretion as to the amount; or, in the language of Lord ELLENBOROUGH, . . . 'this court would interfere so far as to set the inferior jurisdiction in motion.'"

On the same principle it was held in *Bright v. Supervisors*, 18 Johns. 242, that a mandamus would lie to the supervisors of a county to compel them to allow the account of the clerk of the county for advances made by him in purchasing books for recording deeds and mortgages, upon the same theory that the question of whether or not the price of these books was a proper charge against the county was a question of law which the court had power to review.

The next citation by the respondent is to p. 540 of 19 Am. & Eng. Enc. Law. The author there simply lays down the general proposition that " public officers acting faithfully and without fault, and pursuant to

authority are entitled to be reimbursed for anything reasonably and necessarily disbursed by them in executing the duties of their office;" and that "the public or a public corporation has power to indemnify their officers and agents against any charge or liability they may incur in the *bona fide* discharge of their duty, even though their acts were illegal." The first citation under this announcement is a case we have just noticed, viz., *Bright v. Supervisors, supra,* and the cases cited generally to sustain that text are in no way in conflict with the doctrine which we have announced above, and none of them comprehends a case where the officer has acted upon a question which has been submitted by law to the discretion of another tribunal.

All that is decided in *United States v. Flanders,* 112 U. S. 88 (5 Sup. Ct. 67), is that a collector of internal revenue, in a suit against him on a bond, brought to recover public money collected by him and not paid over, should be allowed, as a set-off, money paid by him for publishing advertisements required to be made by certain sections of the statutes, if the amount was found to be reasonable and proper. It seems that the real question at issue in this case was not a question of discretion, but whether or not the claim of the collector was a proper claim under the statute. The court, in closing the case, says:

"In the present case, the statute required the advertisements to be made, and there is nothing in it which implies that they are to be paid for out of the compensation to be allowed, or that they are not to be reimbursed because they are not named with stationery and blank books, or because 'advertising' was first inserted in the act of 1865."

So that this case falls with the other cases which we have mentioned, where the courts held that they have a right to pass upon the legality of a claim.

The cases, cited by respondent, of *Morris v. Stull*, 96 Mo. 597; *United States v. Smith*, 39 Fed. 490, and *Dogget v. Fur Co.*, 99 Ind. 334, seem to be miscitations, not being in the volumes cited, and we have been unable to find them.

The case of *County of Schuyler v. Bogue*, 38 Ill. App. 48, decides what was decided by this court in the case of *Nelson v. Troy*, 11 Wash. 435 (39 Pac. 974), viz., that a statute which fixed the compensation of a county clerk did not include within the compensation the expenses of the office; and *County of Schuyler v. Wells*, 38 Ill. App. 51, is decided upon the same theory.

The case of *Washington County v. Jones*, 45 Iowa, 260, was based upon a statute which provided that "when a county officer, receiving a salary is compelled by the pressure of the business of his office to employ a deputy, the county court may make a reasonable allowance to such deputy." This statute superseded the statute which provided that the clerk should furnish at his own expense all necessary deputies. In this case the clerk was called upon to transact probate business and the real question before the court was whether he could be legally held to transact the additional probate business under the salary provided by law for his services as clerk; and the court held that he could not; that they were additional services which were not contemplated by the law fixing his salary, and that he was entitled to them.

*Bradley v. Jefferson County*, 4 G. Greene, 300, does not disclose the statute upon which the case was decided. This much, however, is quoted by the court, it says:

"Sec. 417 of the code contemplates precisely such a case as this, and provides 'that the county court may make a reasonable allowance to the deputy.' The

court below probably construed this section so as to leave the question of payment discretionary with the county court. In this we think it erred."

It appears from the opinion in this case that the statute provided for the appointment of the deputy outside of any action of the county court. At all events, the opinion is so brief that, the provisions of the statute not being disclosed, it cannot be cited as authority for or against the contention of the respondent in this case.

A late case, however, decided by the supreme court of Wyoming, reported in 40 Pac. 304, viz., *Griggs v. Board of Commissioners,* seems to us to be in point on the contention that the commissioners, having consented to the appointment of these assistants, had no power to remove them. The statute of Wyoming provides that county clerks in counties of the third class may, with the consent of the board of county commissioners, appoint one deputy (it will be observed that this is substantially the provision of § 2973 of our statutes relied upon by the respondent) and the court in that case held that where the deputy had been appointed with the consent of the board, such consent could at any time be withdrawn and the deputy removed, whenever in the judgment of the board the public interest required it, or when the revenues of the county were insufficient to warrant the continuance of such an officer.

The conclusion which we have reached, not only from the authorities investigated, but from the plain language of the statute, which it seems to us is hardly susceptible of construction, is that the legislature has made provision for the payment of the salary of the auditor and sheriff on the supposition that such salary would ordinarily be a sufficient compensation for the

work done in those departments of the county; but that, in case there should be a question as to the necessity for further assistance, that question of necessity has been submitted to the discretion of the board of county commissioners; and that in this case the record shows that the board has exercised its discretion and has found as a matter of fact that such extra assistance was not necessary to the carrying on of the business of the county; and that such finding is conclusive upon the courts. If it eventuates that the board has not exercised its discretion in a sensible way, or in such a way as to subserve the best interest of the county, the only remedy that the people have is the exercise of an intelligent choice at the polls.

There is another construction of these statutes which is plausible, and that is that the provision of § 2973 applies to cases where the duties are greater than can be performed by the officer, in which case he may appoint a deputy whose services shall be paid for out of the salary of the officer appointing him; while § 3003 applies to a different character of cases. It is not required under this section that the duties of the office shall be greater than can be performed by the officer, but under its provisions, when, in the judgment of the commissioners, the salary is inadequate for the services required of the officer, a deputy may be appointed whose salary may be fixed by the board and paid by the county. In counties where the salary of an officer is so small that he cannot afford to hire a deputy it might frequently happen that a rush of business would necessitate extra help, and in such case the commisioners, under the provisions of § 3003, would allow for such services out of the county fund; while, in a case where the salary fixed by law is a larger one, the officer might not be able to do the work, and yet, in

the judgment of the board, the salary might be sufficient to pay for all the work done.   But this construction would be equally fatal to respondent's case.

The judgment will be reversed and the cause dismissed at the respondent's cost.

HOYT, C. J., and ANDERS and GORDON, JJ., concur.