[No. 26094. Department One. July 7, 1936.]

THE STATE OF WASHINGTON, *on the Relation of W. T. Farmer, Respondent*, v. J. W. AUSTIN *et al., Appellants.*[1]

*Joseph T. Pemberton* and *R. E. Young,* for appellants.

*Thomas & Keplinger* and *Sather & Livesey,* for respondent.

GERAGHTY, J.—In this action, the relator below, W. T. Farmer, as sheriff of Whatcom county, sought a peremptory writ of mandate directing the members

[1]Reported in 59 P. (2d) 379.

of the board of county commissioners of that county to vacate and rescind a resolution, by the terms of which the number of deputies authorized to be employed by the relator in his office as sheriff was reduced from six to four, and requiring the commissioners to audit and allow the pay rolls of the relator for the month of July, 1935, and for all subsequent months. After answer by the county commissioners, the cause was tried to the court, which made findings of fact favorable to the relator and entered judgment directing the issue of the peremptory order. Two of the county commissioners, J. W. Austin and Jacob S. Smith, appeal from the judgment. The third commissioner, Frank Cramer, is not participating in the appeal. For convenience, the sheriff, relator below, will be referred to as respondent, and the commissioners, defendants below, as appellants.

In his affidavit, the respondent sets forth that, for the preceding eight years, the county commissioners of Whatcom county had recognized the necessity for the employment by the sheriff of at least six deputies in his office, and had audited and allowed the pay rolls of the sheriff carrying that number of deputies; that, for the first six months of the year 1935, the commissioners approved the personnel of the sheriff's office, consisting of six deputies, and regularly audited and allowed the pay rolls for their payment; that, in order to properly carry on the necessary and mandatory duties of the sheriff's office, it is required that the sheriff have at least six deputies; that, on June 25, 1935, the respondent arrested J. W. Austin, chairman of the board of county commissioners, for a violation of the motor vehicle laws of the state of Washington, and, on July 2, 1935, the fact of said arrest was first made public; that, on this last named date and after publicity had been given to the arrest, the board of

county commissioners, acting by and through two of its members, J. W. Austin and Jacob S. Smith,

" . . . motivated by malice and spite as against the relator, arising out of, and because of, said arrest of said J. W. Austin, and not otherwise, and without any warrant or cause therefor other than said spite and malice, passed a resolution providing that, effective as of midnight July 5, 1935, the number of employees of the sheriff's force of the county should consist of one office deputy and one field deputy only.''

The resolution referred to follows:

"BEFORE THE BOARD OF COUNTY COMMISSIONERS OF WHATCOM COUNTY, WASHINGTON

"WHEREAS: It is the purpose of this Board to exercise the utmost economy possible, in the expenditure of County Funds in all of the various departments of the County Government, and—

"WHEREAS: The amount of money received by the Sheriff's office in fees for services rendered is only slightly over one-third of what it was in recent years, and—

"WHEREAS: A large part of the crime investigation is being conducted in this county by the State Patrol, and as a consequence the work of the Sheriff's force has been greatly lessened, and—

"WHEREAS: A large number of the prisoners who have been in recent months and now in the County Jail are there as a result of arrests made by other officers of the law and not by the Sheriff's force, and—

"WHEREAS: Since the repeal of the eighteenth amendment the amount of money received in fines has materially lessened and the need for deputies in the Sheriff's office is far less than it was when the crime of bootlegging was rampant, and—

"WHEREAS: The Sheriff's force has not been reduced in proportion to the amount of work necessary to be done by the Sheriff's office, and—

"THEREFORE BE IT RESOLVED: That effective as of midnight July 5th, 1935, the number of employees on the Sheriff's force shall consist of one Office Deputy and one Field Deputy; and—

"BE IT FURTHER RESOLVED: That any County property being utilized by the employees effected by this order, shall be immediately turned over to the County Auditor.

"Done in regular adjourned session of the Board of County Commissioners of Whatcom County this 5th day of July 1935."

Although this resolution recites that the number of employees on the sheriff's force shall be one office deputy and one field deputy, it appears that it was contemplated that two additional deputies, employed as jailors, were to remain on the force. At the time of the attempted reduction, the sheriff's force consisted of two jailors, an office deputy, a service deputy, and two criminal deputies.

The affidavit further alleged that the work of the sheriff's office, including the service of civil and criminal process, was such that it would be impossible to carry forward its work with a force so limited as that provided for in the resolution; that the resolution was passed by the commissioners without any investigation as to the necessity for the employment of deputies in the sheriff's office, and without notice to the sheriff and without the exercise of any discretion in the matter. It was alleged that the respondent, being unable to carry forward the work of his office of sheriff with the decreased force of deputies provided for in the resolution, had retained a full force of six deputies at all times since the entry of the order, and that it is proper that all such deputies be paid for their services from the funds of Whatcom county.

In their answer, the appellants admitted the passage of the order of July 5th, but denied malice and spite against the respondent as the motive for its passage or that it was passed for any other reason than that of economy and necessity. They denied that it is impossible to carry forward the work of the sheriff's

office with the lessened force provided for in the resolution, denied that the resolution was passed without investigation as to the necessity for the employment of deputies, and declared that the resolution was passed with full knowledge of the conditions of the sheriff's office, and in the exercise of the discretion reposed in the board with reference to the matter, and with full knowledge of the civil and criminal business transacted by the sheriff's office and the number of deputies necessary to perform its mandatory duties.

The answer further alleged that, in the examination of the various county offices, the board of county commissioners had determined that there were more deputy sheriffs than were necessary to carry on the work of the office, taking into consideration the facts which are set forth in the resolution of July 5th; that, in passing the resolution, the board of county commissioners acted in accordance with what they thought to be the best interests of the people of Whatcom county; and that they exercised their best judgment and sound discretion under all the surrounding conditions.

Much of the evidence contained in the voluminous record was offered for the purpose of showing that the commissioners, in passing the controverted resolution, were inspired by spite against the sheriff, or by other improper motives.

That much bitterness and ill will existed between the sheriff and the two commissioners forming the majority of the board of county commissioners, is abundantly evidenced by the record, each party to the controversy admitting the fact but imputing the cause to the other. The sheriff and commissioners were elected upon the same party ticket at the 1934 election. They belong, however, to different factions of the party, and, as frequently happens in such cases, the

factions are more in opposition to one another than to their common opponents.

With the existence of this factional feeling between the sheriff and the commissioners, it is not to be wondered at that the commissioners were diligent in seeing that the sheriff retained no unnecessary deputies, and that the sheriff, on the other hand, was not slow to take advantage of any opportunity offering itself to embarrass the commissioners. The feud came to a head when, on the night of June 25, 1935, the sheriff, accompanied by one of his deputies, drove to the home of the chairman of the board of county commissioners and placed him under arrest, nominally for a minor infraction of the motor vehicle law, but with attendant circumstances embarrassing to the commissioner. No publicity was given to the incident at the time, and thereafter the charge was dismissed. But the newspapers got wind of the incident and, on July 2nd, exploited it under prominent headlines. Subsequent to this publication, the resolution of July 5th was passed by the board of county commissioners, the appellants constituting the majority voting therefor.

The trial court was of the view that the feud between the sheriff and the commissioners, culminating in the arrest of the chairman of the board, with the subsequent newspaper exploitation, was the principal motive inspiring the passage of the resolution.

■ Courts will be slow to weigh motives in determining the legality of the acts of subordinate public bodies in the exercise of discretionary powers. It is the accepted rule that, in passing upon legislative enactments or city ordinances, the courts will not inquire into the motives or arguments moving the legislative bodies. *Shepard v. Seattle,* 59 Wash. 363, 109 Pac. 1067, 40 L. R. A. (N. S.) 647. While this rule does not apply with equal force to the performance of ad-

ministrative functions by subordinate bodies, the courts nevertheless hesitate to control the exercise of their discretion upon the consideration of imputed wrongful motives. It has been said that bad motives might inspire an act which appeared on its face valid and beneficial, while a bad and invalid act might be, and sometimes is, done with good intent and the best of motives.

While it may be possible that the arrest of the chairman of the board, with its incidents, may have contributed to the passage of the resolution, the record admittedly shows that, in May and the early part of June, the matter of the reduction of the sheriff's force was under consideration, and that the senior judge of the superior court of Whatcom county had attempted, without success, to bring the sheriff and commissioners into accord.

After all, the question at issue is one of power,—whether the commissioners, as the governing board of the county, may, in the exercise of the discretionary power vested in them, reduce the sheriff's force from six to four deputies.

Courts will not by mandamus attempt to control the discretion of subordinate bodies acting within the limits of discretion vested in them by law. Where courts do interfere, it is upon the theory that the action is so capricious and arbitrary as to evidence a total failure to exercise discretion and is, therefore, not a valid act. *State ex rel. Brown v. Board of Dental Examiners,* 38 Wash. 325, 80 Pac. 544.

"If the court has the power to compel the board to exercise its discretion, it would seem reasonably to follow that it has the power to vacate and annul the order of such board which is not the result of the exercise of an honest discretion, but is an arbitrary and capricious action." *State ex rel. Yeargin v. Maschke,* 90 Wash. 249, 155 Pac. 1064.

In other words, the court cannot direct the county commissioners to authorize the employment by the sheriff of six deputies rather than four. If it is competent for the court to intervene at all, it is upon the view that the resolution, by reason of the capricious and arbitrary manner of its passage, was not a valid act of the board.

Several sheriffs and peace officers, including the chief of the state highway patrol, testified as to the proper force required to administer the sheriff's office in Whatcom county. Their testimony tended to show that the existing force of the sheriff's office would be necessary, as a minimum, to carry on the work. Of course, a sufficient answer to this testimony is that it was for the commissioners of Whatcom county to say, and not for outside peace officers, however qualified, what was required in the way of assistance to carry on the work of the sheriff in Whatcom county. The witnesses might have one view as to the amount of services required and the commissioners another.

Now, looking into the statutory provisions governing the sheriff's office, we find that, from the organization of the territory until the admission of the state into the Union, the sheriff's office was a fee office. That is to say, the law prescribed a schedule of fees for his official acts, which he was entitled to collect and keep as compensation for his services. The first session of the territorial legislature prescribed a schedule of fees, and § 2 of chapter L of the laws of that session (Laws of 1854, p. 434, § 2) authorized the appointment by the sheriff of as many deputies as he might think proper and for whose official acts he was to be responsible to the amount of his bond and whose appointments he might revoke at pleasure. This section is still the law as Rem. Rev. Stat., § 4160 [P. C. § 1797]. The sheriff was allowed to appoint as many

deputies as he chose, but he was to pay them himself out of the emoluments of his office.

The 1890 session of the legislature, in obedience to the mandate of the state constitution, classified the counties and placed the sheriff's office, with other county offices, on a salary basis, requiring that all statutory fees collected be paid into the county treasury. The plan of the law, however, was that primarily the sheriff should perform all of the duties incumbent upon the office for the salary fixed. This thought is embodied in § 32 of chapter X of the laws of 1890, p. 312, which provided that the county officers should receive a salary for the services required of them by law, or by virtue of their office, to be full compensation for all services of every kind and description rendered by them. However, this section, which is embodied in the code as Rem. Rev. Stat., § 4210 [P. C. § 1603], contains the following proviso:

"Provided, that in case the salaries herein provided for are, in the judgment of the board of county commissioners, inadequate for the services required of the officers named herein, then the said board of county commissioners may allow such officer a deputy, or such number of deputies as, in their judgment, may be required to do the business of such office in connection with the principal, for such time as may be necessary, and at such salary as they may designate; the said deputies shall be paid in the same manner and time as their principals: Provided, that the county commissioners shall pay the actual traveling expenses of the sheriff while on official duties, to be audited by the board of county commissioners."

In the case of *Dillon v. Whatcom County*, 12 Wash. 391, 41 Pac. 174, where the court had under consideration the right of a county auditor and sheriff to recover from the county compensation paid for clerks and deputies not authorized by the county commissioners,

the court, speaking through Judge Dunbar, after an exhaustive examination of the authorities, said:

"The conclusion which we have reached, not only from the authorities investigated, but from the plain language of the statute, which it seems to us is hardly susceptible of construction, is that the legislature has made provision for the payment of the salary of the auditor and sheriff on the supposition that such salary would ordinarily be a sufficient compensation for the work done in those departments of the county; but that, in case there should be a question as to the necessity for further assistance, that question of necessity has been submitted to the discretion of the board of county commissioners; and that in this case the record shows that the board has exercised its discretion and has found as a matter of fact that such extra assistance was not necessary to the carrying on of the business of the county; and that such finding is conclusive upon the courts. If it eventuates that the board has not exercised its discretion in a sensible way, or in such a way as to subserve the best interest of the county, the only remedy that the people have is the exercise of an intelligent choice at the polls."

And again, in that case, it is said:

"The whole question of employment outside of the person of the employe seems to be submitted to the judgment of the board of county commissioners by language which is inconsistent with any other thought than that of direction by the commissioners. In the first place, it provides that if the salary, '*in the judgment of the board,*' is inadequate; and as indicating the vesting of discretion no stronger words could be used. Again, 'the said board of county commissioners may allow such officer a deputy.' The word 'allow' naturally conveys the idea of permission upon the part of the county commissioners; not of consultation or agreement or a division of responsibility, but purely a permission. Again, the law provides further that as to the number of these deputies the judgment of the board of county commissioners is to be exercised, and

it specially provides that the salary of such help shall be such a salary as the board may designate.''

In *Thomas v. Whatcom County*, 82 Wash. 113, 143 Pac. 881, where the issue involved was the right of the county commissioners to control the appointment of deputies in the office of the sheriff of Whatcom county by suspending the salaries of three named deputies so long as they should be employed by the sheriff, the court held that this was an unwarranted attempt on the part of the commissioners to control the personnel of the sheriff's office. Distinguishing that case from the *Dillon* case, the court said:

''In the present case, the board attempted to determine that certain persons should not be appointed deputies in the sheriff's office. In the *Dillon* case, the board in finding that no clerks were necessary and fixing the salary of the deputy, was exercising powers conferred upon it by statute. In the present case, the board, in attempting to determine that certain persons should not be appointed deputy sheriffs, was invading the power conferred by statute upon the sheriff.

''Our conclusion is, . . . third, that the board has the right to determine the number of deputies in county offices and fix their salaries; . . .''

The respondent relies upon the case of *State ex rel. Yeargin v. Maschke*, 90 Wash. 249, 155 Pac. 1064, already referred to. That case is not in point here. In that case, the court held invalid an order reducing the salary of the court commissioner, appointed for Ferry county, from fifteen dollars to one dollar per month. The state constitution, Art. IV, § 23, provides for the appointment of a court commissioner, with authority to perform like duties to those of a judge of the superior court at chambers and such other business in connection with the administration of justice as may be prescribed by law. A statute provided for the appointment of the commissioner by the judge of the su-

perior court of the county, and provision was made for a salary in addition to fees. In announcing its conclusion, the court said:

"If the board of county commissioners, by reduction of the salary of court commissioner, can force the vacation of that office, which, under the statute, the judge of the superior court has the right to fill, it in a measure takes from the judge of the superior court the power of appointment and vests it in the board of county commissioners."

The office of court commissioner was a constitutional one, and, as the statute provided for the payment by the county of a salary, the action of the commissioners in reducing the salary to one dollar, amounting in effect to no salary at all, was in direct disregard of constitutional and statutory mandate.

In the light of the known financial difficulty of the counties and considering the circumstances of the times, the court cannot say that an order reducing the force of deputies in the sheriff's office from six to four was so capricious and arbitrary as to be void. It may be that the action of the majority of the board of county commissioners was improvident and ill-considered, but, if so, the remedy lies with the electors rather than in the courts. If it be assumed that the business of the sheriff's office will be hampered by the reduction in force, the harm will not be nearly as great as would be the consequences of the interference by the courts with the executive duties of the board of county commissioners, in whom is reposed the financial management of the county's affairs.

The judgment is reversed, and the cause remanded to the superior court with direction to dismiss.

MILLARD, C. J., MAIN, MITCHELL, and STEINERT, JJ., concur.