[No. 27289. Department One. February 20, 1939.]

THE STATE OF WASHINGTON, *on the Relation of Vincent F. Hearty, Respondent,* v. SAM MULLIN *et al., Appellants.*[1]

[1]Reported in 87 P. (2d) 280.

*A. C. Van Soelen* and *Glen E. Wilson,* for appellants.

*Little, Burgunder & Smith,* for respondent.

MAIN, J.—The relator, Vincent F. Hearty, brought this action seeking a writ of mandate ordering the then members of the civil service commission of the city of Seattle to restore him to position No. 14 on the eligible list for auto truck driver in the classified civil service of the city of Seattle, and directing that he replace any eligible whose position on the list was lower than No. 13. The trial resulted in findings of fact from which the court concluded that the relator was entitled to the relief which he sought. From the judgment entered in accordance with the findings and conclusions, the members of the civil service commission appealed.

The facts, as found by the trial court and which the evidence supports, may be summarized as follows: April 7, 1937, the civil service commission, after having given due notice thereof, held a written examination for the position of auto truck driver in the classified civil service of the city. The written examination was supplemented by a practical driving test, and, in determining the grades of the applicants for such examination, the commission took into consideration the previous experience of the applicants in the operation of trucks. Following the examination, the examiners appointed by the commission to conduct such examination determined the grade of each applicant and reported the results thereof to the civil service commission at its meeting on June 30, 1937,

" . . . at which time the results of the examination were approved, the necessary identification of papers ordered, and eligible list ordered established, subject to the results of medical test."

Hearty was one of the persons taking the examination, and on July 3, 1937, was notified by the commis-

sion, in writing, that he had obtained a grade of 88.336 in such examination, and shortly thereafter he, together with certain other successful applicants, was directed to, and did, report for a medical examination, which he successfully passed. July 20, 1937, the commission, through its secretary, prepared a list of those passing the examination, showing thereon the grades obtained by each applicant and the relative standing of each applicant. Hearty was placed No. 14 on the list of those passing the examination and passing the medical test.

Subsequently, and on September 7, 1937, the commission passed a resolution to the effect "that the relative weights be adjusted as follows: Written test, 20%; working test, 40%; experience, 40%," and eliminated the item of education from grading experience. At the examination taken on June 30th, the standard used was: Written test, 20%; working test, 60%; and experience, 20%. The applicants were regraded in accordance with the resolution of September 7th. It will be observed that the weight to be given to experience was raised from 20% to 40%, and the working or driving test was lowered from 60% to 40%, in the regrading. The result was to change Hearty's average from 88.336 to 83.096, and to lower him from position No. 14 to position No. 41.

When Hearty received his new grade, he caused to be filed with the commission on October 8, 1937, his protest against the reduction in his grade. This protest was considered by the commission October 26th of that year and ordered placed on file. November 3, 1937, Hearty was informed by the commission that his protest had been rejected. The present action was begun March 12, 1938, for the purpose above stated, and resulted as indicated.

The principal question is whether the commission,

after the first grading and after the identity of the applicants had become known, had the right to subsequently regrade on a different basis and change the relative standing of Hearty, as well as others.

The charter of the city of Seattle authorizes the civil service commission to make rules with the view of carrying out the purposes of civil service and from time to time to make changes in existing rules. Pursuant to the authority given by the charter, the commission promulgated § 11 of Rule IV, which reads as follows:

"When final grades of an examination are determined, the Commission shall pass on the results thereof. If approved, the papers shall then, and not before, be identified and notice of his grade shall be sent each competitor. Any competitor may inspect his examination papers within one week of the date of such notice, and if he finds material error in the marking, or in computing the final results, he may make definite written showing to the Commission. The Commission shall consider these claims and make any proper corrections. When such corrections apply to other competitors the same shall be ordered on all papers affected, whether resulting in higher or lower average standing.

"Where identification is necessary to call some competitors for any later parts of an examination, all previous parts shall be graded and passed on by the Commission as above, prior to identification for such later notices."

It will be noticed that this rule, in effect, provides (a) that, after the final grades of an examination are determined, the commission shall pass upon the results thereof, and, if approved, the papers shall then, "and not before, be identified and notice of his grade shall be sent each competitor;" (b) that any competitor may inspect his examination papers within one week from the date of such notice, and, if he finds material error

in the marking or in computing the results, "he may make definite written showing to the commission;" (c) that the commission shall consider these claims and make any proper corrections, and, when such corrections apply to other competitors, the same shall be ordered on all papers affected, whether resulting in higher or lower average standing; and (d) that, when identification is necessary, so that the competitors may be called for any later parts of an examination,

"All previous parts shall be graded and passed on by the commission, as above, prior to the identification for such later notices."

The first and last provisions of this rule definitely show that the purpose was to have the examination conducted in such a manner that the identification of the applicants should not be known until their grades had been established, except where later parts of the examination required such identification.

While the commission has a wide discretion in the examination of applicants for public employment, with regard to the manner of performing its duties and exercising its powers (*Pratt v. Rosenthal,* 181 Cal. 158, 183 Pac. 542), it has no right or power to grant rehearings or new trials after once having finally disposed of the matter. *People ex rel. Finnegan v. McBride,* 226 N. Y. 252, 123 N. E. 374; *State ex rel. Worsham v. Brown,* 126 Wash. 175, 218 Pac. 9. The commission may not violate its rules formally promulgated. *State ex rel. George v. Seattle,* 184 Wash. 560, 52 P. (2d) 360.

The purpose of the rule, as well as the principle underlying civil service, is to make free and open the opportunity to enter the public service in accordance with certain tests as to qualification, and not to leave anything "to whim or caprice of the appointive power."

The commission, in this case, in regrading the papers after they had approved, as the court found, the first grading and the identification of the applicants had become known, violated the provisions of the rule, above mentioned, as well as the principle of civil service. If the commission can do legally what it did in this case, civil service examinations would be subject to the whim or caprice of the commission.

Attention is called to that provision in the rule which authorizes any competitor to inspect his papers and make written protest, and with reference to which the commission shall consider the protest and make any proper corrections, even though they apply to other competitors and might result in a higher or a lower average standing. Whatever the meaning of that rule may be, it cannot be given the construction which would support the action of the commission in this case. To do so, would, in effect, destroy the secrecy of the examination as to the identity of the applicants and result in a grading after the identity had become known. In addition to this, as found by the trial court:

"The only written protest made to the commission by any of the persons taking said examination was from C. W. Reese under date of July 9, 1937; that said protest, so far as is disclosed by the records of the commission, was never considered by, or acted upon, by them."

It thus appears that the provision of the rule now relied on by the appellants was not invoked, except by one of the applicants, and that that protest was never considered or acted upon by them. Plainly, Hearty was entitled to the relief which he sought and obtained in the superior court.

The appellants say, however, that Hearty was guilty of laches in not bringing his action at an earlier date. As above appears, notice was given him No-

vember 3, 1937, of the rejection of his protest, and the action was begun March 12, 1938. Laches is a doctrine of equity. To constitute laches, not only must there have been delay in the assertion of a claim, but " 'some change of condition must have occurred which would make it inequitable to enforce the claim.' " *State ex rel. Kubel v. Plummer,* 130 Wash. 135, 226 Pac. 273; *Auve v. Wenzlaff,* 162 Wash. 368, 298 Pac. 686.

In the case now before us, the commission was in no wise prejudiced by the delay. Prior to the time that they gave Hearty notice of the rejection of the claim, they had established the eligible list, and nineteen of those whose names were on that list had been given employment, some of whom, as the result of the first grading, ranked below Hearty on the eligible list established by that grading.

The judgment will be affirmed.

BLAKE, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.