[No. 27409. *En Banc.* June 13, 1939.]

FLORENCE HUGHES LAVIGNE, *Appellant*, v. MERVIN G. HUGHES, *Respondent.*[1]

[1]Reported in 91 P. (2d) 560.

286

*Grinstead, Laube & Laughlin* and *C. P. Borberg*, for appellant.

*Mervin G. Hughes* and *Wettrick & Wettrick*, for respondent.

MAIN, J.—In the second amended complaint in this case, which will be referred to as the complaint, there are two causes of action, separately stated. In one, the plaintiff seeks to quiet title to an undivided one-half of certain real property in the town of Kirkland,

in King county. In the other, she seeks an accounting for the rents, issues, and profits of the property. The defendant, in his answer, denied the right of plaintiff to recover upon either cause of action, and affirmatively pleaded the statute of limitations and laches. The trial resulted in findings of fact from which the court concluded that the plaintiff was not entitled to recover upon either cause of action, and that the defendant should have a decree quieting his title to the property. From the decree entered in accordance with the findings and conclusions, the plaintiff appealed.

The facts essential to be stated are these: The appellant, Florence Hughes Lavigne, and the respondent, Mervin G. Hughes, were married August 6, 1911, and, as the result of this marriage, one child was born, a son. In 1923, the parties were divorced. The interlocutory decree was entered July 26th of that year, and the final decree, May 23, 1927.

In the findings of fact, as entered, when the interlocutory decree was entered, it was found that the parties were the owners of certain real property, described therein, in which the property now in controversy was included. It was also found that the real property was encumbered by mortgages and contracts, subject to certain claims and liabilities; and, in order that the same might be preserved as a valuable asset, it would require the attention and management of the husband. There was the further finding that the value of the property, above all liabilities, claims, and encumbrances, was the sum of four thousand dollars.

In the conclusions of law, it was provided that the property rights of the parties, the custody of the child, who was then eight years of age, and provisions for the support and maintenance of the child, as embodied in a certain agreement entered into between the parties July 19, 1923, "should be incorporated in the decree

of divorce and in the interlocutory decree herein." That agreement, as found by the trial court in this case, covered the matter of the custody of the child, alimony for his support, the creation of a trust fund as a contribution towards his college education, and that, when the trust fund was created, as provided in the agreement, the appellant should transfer her interest in the property to the respondent. It was provided that the respondent would pay to the appellant, for a period of ten years, fifty dollars per month for the support and maintenance of the child, and that he would create a trust fund in the sum of two thousand dollars.

Of this trust fund, the First National Bank subsequently became the trustee, and, after the divorce, five hundred dollars was paid therein. The agreement was that five hundred dollars should be paid each year for four successive years. No further sums were paid into the fund.

In 1928, the respondent having been delinquent in the payment of the alimony for the support of the child, the appellant subsequently drew out the trust fund and applied it on the delinquent alimony, which, under the agreement, she had a right to do.

In the findings in this case, it was said that, at the time of the divorce action, the legal title to the property of the parties was vested in a corporation; but, notwithstanding this, the actual and equitable title to the property, together with the improvements thereon, was vested in the parties as a marital community. It was also said that the legal title to the property was vested in the corporation for the convenience of the parties. Subsequently, the legal title was transferred by the corporation to the respondent, and the corporation has since been dissolved.

The appellant at no time executed or delivered a deed to the property, as it was provided that she

should when the trust was created; that is, "as and when the defendant [respondent] should have deposited therein the sum of $2,000 at the times and in the manner" provided in the written agreement. The present action was begun August 9, 1929, and was not brought on to trial until sometime during the year 1938.

The first question is whether the appellant in this case had a right to have her title quieted to one-half of the real property which the parties owned at the time of the divorce.

█ Under the provisions of Rem. Rev. Stat., § 988 [P. C. § 7507], the interlocutory decree in a divorce case should dispose of the property rights of the parties, and such a decree is final, subject to the right of appeal. *Brown v. Brown,* 192 Wash. 333, 73 P. (2d) 795.

█ If it is not disposed of in the interlocutory decree, the title to the community property vests in the former owners of the property as tenants in common. *Ambrose v. Moore,* 46 Wash. 463, 90 Pac. 588, 11 L. R. A. (N. S.) 103; *Graves v. Graves,* 48 Wash. 664, 94 Pac. 481; *Harvey v. Pocock,* 92 Wash. 625, 159 Pac. 771.

Inquiry must, then, be directed as to whether the interlocutory decree operated to transfer all of appellant's interest in the community property to respondent. The agreement, as already indicated, provided that the appellant should deliver a deed or deeds to the property to the trustee named for the benefit of the respondent, when the trust provided for should be created by having deposited therein the sum of two thousand dollars. The two thousand dollars was never deposited, and the condition upon which the transfer was to be made was never performed. The agreement, by its terms, as found by the trial court, did not operate to transfer the title.

█ Even though the period of time is long since

the interlocutory decree of divorce was entered and a considerable number of years expired before the action was brought to trial, we find no basis, so far as the real property is concerned, for holding that the statute of limitations had run, or that the doctrine of laches was applicable.

There are no facts found, and the evidence does not support any, which would justify a conclusion that the respondent had acquired title by adverse possession, and we do not understand that it is contended that he did.

As to laches, assuming, without so deciding, that laches would operate to deprive the appellant from asserting her title to one-half of the real property, short of the running of the statute of limitations, we find no basis for applying that doctrine in this case. To constitute laches, not only must there have been delay in the assertion of the claim of title, but "some change of condition must have occurred which would make it inequitable to enforce the claim." *State ex rel. Kubel v. Plummer,* 130 Wash. 135, 226 Pac. 273; *Auve v. Wenzlaff,* 162 Wash. 368, 298 Pac. 686; *State ex rel. Hearty v. Mullin,* 198 Wash. 99, 87 P. (2d) 280.

There is nothing in this case which would make it inequitable to sustain the appellant's title to one-half the property, which consisted of town lots upon which a garage had been erected. Since the divorce action, the respondent has been in possession of the property and received as gross income the sum of $14,270. He has expended for necessary upkeep and taxes the sum of $9,474, which left a net income, exclusive of depreciation, if any there was, in the sum of $4,076.

As to the income from the property subsequent to the divorce, the appellant is precluded from having an accounting therefor by reason of the doctrine of laches, and this, without reference to the statute of

limitations. There had not only been long delay in asserting the claim, but there had been a change of condition, so far as the rents and profits were concerned, which would make the enforcement of the claim inequitable.

There is a contention that it would be unconscionable to permit the appellant to have her title quieted in one-half of the real property. But we are not impressed by this contention. While the respondent, in his answer, pleaded the statute of limitations and laches, he did not, directly, attack the interlocutory decree, and the objection to the enforcement of the provisions of that decree now becomes a collateral attack. *Hilleware v. Hilleware,* 104 Wash. 361, 176 Pac. 330; *Fullington v. Fullington,* 106 Wash. 239, 179 Pac. 843.

By the agreement, which became a part of the interlocutory decree of divorce, as stated in the findings in this case, the respondent was to pay the appellant fifty dollars a month, over a period of ten years, for the support and maintenance of the child, which would amount to the sum of six thousand dollars. He was also to pay into the trust fund the sum of two thousand dollars, or a total of eight thousand dollars. The total amount paid by him, including the five hundred dollars which was paid into the trust fund and subsequently withdrawn, as indicated, was the sum of five thousand dollars. It thus appears that he paid three thousand dollars less than the agreement and the interlocutory decree provided that he should. During all the years since the divorce, he has had the possession of the property and the benefits of its earnings, the net amount of which was as above indicated. Under these facts, we are unable to see that there is anything inequitable or unconscionable in enforcing the interlocutory decree.

The appellant was entitled to have her title quieted to one-half the real property involved, and she was not entitled to an accounting for the rents and profits. The respondent was not entitled to have the title to the appellant's half of the property quieted in himself, but he was entitled to retain the rents and profits thereof.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a decree as herein indicated.

BLAKE, C. J., GERAGHTY, and JEFFERS, JJ., concur.

BEALS, J. (concurring) — The interlocutory order, dated July 26, 1923, entered in the action brought by appellant against respondent, for the purpose of procuring a decree of divorce, after awarding to appellant the custody of the then minor son of the parties, adjudged that respondent pay to appellant the sum of fifty dollars a month for the period of ten years, for the support and maintenance of the child. This portion of the order is definite and complete in itself, and is followed by a paragraph of the order directing that appellant create a trust fund "for the use and benefit of plaintiff and said minor son," in the amount of two thousand dollars, of which five hundred dollars should be paid into the fund by respondent, on or before July 19, 1924, the entire two thousand dollars to be paid into the fund by July 19, 1927. The order further provided that the fund so deposited should be held in trust by the bank or trust company having custody thereof, for the care, maintenance and education of the child, and should "not be disturbed or dissipated until the 10th day of August, 1933," unless the child should become sick, or upon the happening of another contingency hereinafter referred to.

The order then provided that, after August 10, 1933,

appellant might withdraw the fund in annual installments of five hundred dollars, and use the same for the education and maintenance of the child, any balance remaining in the fund after August 10, 1937, to be turned over to the son.

The order further provided that, in the event of the death of the son before the expenditure of the trust fund, appellant

". . . shall immediately, upon proof of such death, be entitled to withdraw all moneys then remaining in said trust fund as her own and separate property, and to use the same as she sees fit, without accounting therefor."

The order further provided that, in case the respondent should

". . . fail or neglect during any month to pay plaintiff the sum of Fifty Dollars ($50) per month for the support and maintenance of said son, plaintiff shall be entitled, upon making affidavit of such fact, to withdraw the sum of $50.00 from the trustee, and thereupon it shall be the duty of said defendant to replace said money so withdrawn."

It is also adjudged in the order that

". . . upon the creation of said trust fund said defendant shall be entitled to receive from plaintiff quit claim deeds to all of the community property of said parties, said deeds to be signed and acknowledged by plaintiff and delivered in escrow in a bank or trust company in the city of Seattle, or San Francisco, to be designated by plaintiff, and to be delivered to said defendant by said bank or trust company when said defendant shall have deposited in said bank in trust for the use and benefit of plaintiff and said minor son the sum of Two Thousand Dollars ($2,000)."

The interlocutory order was subject to criticism, in that it did not finally and immediately dispose of the community rights and property of the parties, but the order was not appealed from, and must now be con-

sidered as it was written. Pursuant to this order, the respondent herein was to pay fifty dollars per month, save when the minor was with respondent, until August, 1933, and there seems to be no dispute but that respondent should have paid to appellant $6,050, under this portion of the decree, of which respondent paid only approximately five thousand dollars. Respondent paid into the trust fund no more than five hundred dollars, and when he failed to make the payments of fifty dollars per month, appellant availed herself of the right given her by the interlocutory order, and drew out this five hundred dollars at the rate of fifty dollars per month, during the months when respondent failed to pay her the monthly support money. Respondent failed to replace the five hundred dollars, as under the order he was bound to do, and it must consequently be held that respondent never, to any extent whatever, complied with the order that he establish the trust fund.

As the interlocutory order referred to the community property of the parties, but made no disposition thereof, other than as above mentioned, this property remained the common property of the parties. The only property of that character with which we are concerned is the real estate referred to in the majority opinion. Appellant owned a half interest in this property as her community right, and her title has never been divested. Under the interlocutory order, the divesting of her title and the vesting thereof in respondent was dependent upon the payment by respondent of the sum of two thousand dollars into the trust fund. The monthly payments of fifty dollars, which, under the terms of the interlocutory order, respondent was to make, had nothing to do with the divesting of appellant's title to the community property. That title was to be conveyed to respondent only

when he paid into the trust fund the full sum of two thousand dollars. Appellant's title, then, to the community property was never divested; and, as it cannot be held that respondent ever obtained title by adverse possession, or by any other method, appellant still owns her interest in the property, which she now seeks to establish by judicial decree.

It clearly appears from the record that appellant at all times valued her interest in this community property at two thousand dollars, and apparently the trial court, in the divorce action, adopted this valuation and provided for the conveyance of her interest in the property upon payment by respondent into the trust fund of two thousand dollars in money. Respondent failed to establish the trust fund or any portion thereof. Appellant never received that consideration, or any other, for her interest in the community property, her title thereto has never been divested, and it still belongs to her. She is entitled to a decree quieting her title to an undivided one-half interest therein.

In view of all the circumstances and of the equities of the case, and particularly in view of appellant's long delay in asserting her rights, I am in accord with the majority in holding that appellant is not entitled to an accounting concerning the income received by respondent from the property, viewed in the light of the income from the property and the sums disbursed by him for the protection thereof.

I therefore concur in the majority opinion.

STEINERT, J. (dissenting)—I disagree with the majority as to the effect and consequences of the interlocutory order entered July 26, 1923, in the original divorce proceedings. It was manifestly the intention and purpose of the court in that action to dispose of the community property according to the agreement

of the parties, to which reference was made by the same court in its findings and conclusions. According to that agreement, as referred to in the findings in the present action, appellant was directed to execute and deliver to respondent quitclaim deeds to the community property upon the creation by respondent of a trust fund for the benefit of the then minor child. The interlocutory order was made pursuant to Rem. Rev. Stat., § 988 [P. C. § 7507], which provides that such order as to "division of property shall be final and conclusive upon the parties subject only to the right of appeal." No appeal was taken from that order, and it is, therefore, final and binding. As a matter of fact, both parties now rely upon that order as sustaining their present respective contentions. Indeed, having by their agreement induced the court in the divorce action to enter such an order, both parties are now estopped to repudiate or attack it.

What, then, were or are the rights of the parties under the interlocutory order? Appellant was entitled to have the trust fund created by respondent, and respondent was entitled to have quitclaim deeds to the property upon the creation by him of the trust fund.

The purpose and effect of the interlocutory order were to provide security for the trust by subjecting the property under consideration to an equitable lien, to be dissolved when respondent had fully paid the amount of the trust fund. Under such lien, respondent's position, with reference to the property, was similar to that of a mortgagor.

Assuming, for the sake of argument, that appellant had a justiciable interest in the establishment and maintenance of the trust, she then had two remedies under the interlocutory order, upon respondent's defalcation. First, she could have maintained an action of debt for the amount due under the trust agreement

and, upon obtaining judgment, could have had execution issue and levied upon any of respondent's property. Second, she could have instituted an equitable action to foreclose her lien on the property and had the land sold or sequestered under a judicial decree, and the proceeds of sale or the rents upon sequestration applied upon respondent's obligation. She did not adopt either form of remedy, but, instead, has instituted an action in the nature of a rescission of the obligations arising under the interlocutory order with respect to the disposition of the property. Though termed an action to quiet title, it was, in fact, an action to convert a security interest into a tenancy in common by means of a rescission. In the meantime, however, appellant has received five thousand dollars of the eight thousand dollars which respondent was obligated to pay. This, she retains. She is now asking equity, but does not offer to do equity, and, by the majority opinion, she is permitted to reinstate her interest in the community property without accounting for what she has received under the interlocutory order.

Furthermore, it will be noted that appellant did not begin her present action until August 9, 1929, six years after the entry of the interlocutory order and two years after the final decree. The action was then allowed to lie dormant until July 9, 1937, a period of eight years lacking one month. In the meantime, respondent continued to make the monthly payments of fifty dollars. I am of the view expressed by the trial court that the action became stale, and that it was properly dismissed.

More than this, the son, for whom the trust was to be created in order that he might secure a college education, became of age in 1936. The evidence shows that he has spent two years in college. Any loss occasioned by his inability to complete a college education

has been his loss, not that of appellant's, and any claim to the trust fund and the obligations under the trust agreement rests with him, not with her.

In my opinion, under all the circumstances shown to exist in this case, appellant is not entitled to have title to any part of the real estate quieted in her. I therefore dissent.

ROBINSON, SIMPSON, and MILLARD, JJ., concur with STEINERT, J.

