[No. 30035.   Department One.   October 10, 1946.]

*In the Matter of the Guardianship of* KATHLEEN S. MILLER, *Incompetent.*[1]

[1]Reported in 173 P. (2d) 538.

*Marion Garland, Sr., Marion Garland, Jr.,* and *Frank Hunter,* for appellant.

*Merrill Wallace,* for respondent.

SCHWELLENBACH, J.—This is an appeal by the National Bank of Commerce of Seattle, as guardian of an incompetent's estate, from a decree holding that the incompetent had no right, title, or interest in certain real property involved in a prior divorce action. In order to assist in an understanding of the situation, we set out the steps leading up to this appeal in chronological order:

December 10, 1943. Robert B. Miller filed a complaint for a divorce against Kathleen S. Miller, his wife, alleging mental cruelty. Mrs. Miller had been confined in a private mental rest home for a year and a half prior to the commencement of the action. She had never been committed nor found to be insane by an order of the court.

December 31, 1943. Plaintiff petitioned for the appointment of a guardian *ad litem* to represent his wife at the divorce hearing, and Dr. Donald A. Nicholson was appointed as guardian *ad litem* for the wife.

February 4, 1944. Answer of general denial by guardian *ad litem,* together with a report to the court as to the wife's mental condition.

February 9, 1944. After a hearing, findings of fact, conclusions of law, and interlocutory order were entered. The order granted a divorce to the plaintiff on the ground of cruelty, awarded the custody of the minor child of the parties to the plaintiff, awarded him all of the personal property, consisting of stocks in various corporations, three life insurance policies, and household and hospital furniture. The order also provided:

"FURTHER ORDERED, ADJUDGED and DECREED that plaintiff be and he is hereby awarded all the personal property and equity and interest in the real property described as follows, as his own and separate property:

"All of Lot Fourteen (14) and South twenty (20) feet of Lot Fifteen (15), Block Four (4), Town of Bremerton, Kitsap County, State of Washington. . . .

"FURTHER ORDERED, ADJUDGED and DECREED that plaintiff be and he is hereby directed to pay for all hospital care and keep, board and room of the defendant, until the further order of the court.

"FURTHER ORDERED, ADJUDGED and DECREED that if defendant should ever become capable of handling her own affairs and supporting herself, plaintiff should divide with defendant equally all property owned by him at that time when defendant is capable, mentally and physically, to look after and take care of her own affairs."

August 17, 1944. Final decree of divorce.

Later, when the husband attempted to sell the real estate described in the interlocutory order, the title company refused to issue a policy of insurance on the property without guardianship proceedings being instituted. The following proceedings were then had in this matter:

November 27, 1944. Petition of Robert B. Miller asking for appointment of the National Bank of Commerce of Seattle as guardian of the estate of Kathleen S. Miller, incompetent.

December 18, 1944. Order appointing guardian.

January 5, 1945. Letters of guardianship, bond, and oath.

January 9, 1945. Petition of guardian to sell:

"All of Lot 14 and the South 20 feet of Lot 15, Block 4, Plat of the Town of Bremerton, Kitsap County, Washington, together with the furniture located in the building on said premises."

January 9, 1945. Order permitting sale. The order provided in part:

" . . . and it appearing that it is necessary to sell the interest of the ward in the hereinafter described real property to pay the costs of the guardianship, etc., and it further appearing that it is to the advantage of said ward that said guardianship estate be now disposed of, as the ward has an undivided one-half interest therein, . . ."

January 29, 1945. Report of sale by guardian.

February 19, 1945. Order confirming sale. The order provides:

" . . . and it further appearing from the testimony herein that the said incompetent owns an undivided one-

half interest in said property and that the other undivided one-half interest is in Robert B. Miller; and it appearing that the sale price includes the entire value of said real property and the furniture hereinafter described and that the ward's interest in said sale is one-half of $27,500.00 or $13,750.00 and that of said sale price or the down payment thereof $2,500.00 belongs to the ward and the other one-half to the said Robert B. Miller; and it further appearing from the testimony herein that the said Robert B. Miller is satisfied with said sale and that same is acceptable to him; and it appearing to the Court that said sale is a fair sale and a good sale and the Court being fully advised in the premises, it is, therefore,

"ORDERED, that said sale of the following described real property, to-wit: [Here follows a description of the real estate.]

". . . to Victor R. Davis and Agnes C. Davis, his wife, for $27,500.00, or the ward's interest for $13,750.00, with $5,000.00 down (or the ward's interest—$2,500.00), and balance at the rate of $250.00 per month, or more (ward's interest being $125.00 per month), with interest thereon at six per cent per annum on deferred balances, be and same hereby is ratified, approved and confirmed, and the said guardian is hereby directed and authorized to join in a contract of sale with the said Robert B. Miller of said property."

March 19, 1945. Real estate contract executed by guardian and Robert B. Miller, as sellers, and Victor R. Davis and Agnes C. Davis, his wife, as purchasers. The contract recites:

"(One-half of the payments herein shall be made to the National Bank of Commerce of Seattle, a corporation, and the other half to Robert B. Miller. This contract is made in compliance with order of Court in guardianship proceedings No. 7884 of the Superior Court of the State of Washington for Kitsap County.)"

March 25, 1946. Petition for citation, directing guardian to show cause why payments from sale of property should not be set over to the petitioner, Robert B. Miller, and that the guardian should have no further right, title, or interest in and to the same.

April 24, 1946. Answer of guardian to citation.

May 6, 1946. Decree. The decree provides:

"ORDERED AND DECREED that the incompetent, Kathleen S. Miller, has no right, title or interest in and to the following described property:

"Lot 14 and the South 20 feet of Lot 15, Block 4, Plat of the Town of Bremerton, Kitsap County, Washington.

"Nor any right, title or interest in and to the furniture therein nor to the contract entered into between the petitioner and the guardian of the said Kathleen S. Miller, incompetent, as sellers, and Victor R. and Agnes Davis, as buyers; nor to the proceeds, past, present or future, from said contract, and it is further

"ORDERED and DECREED that the guardian is entitled to retain out of the moneys now in its hands, sufficient to pay necessary and proper costs of said guardianship, and an allowance of fees to said guardian and to its attorney, said guardianship having been applied for in good faith, and it is further

"ORDERED and DECREED that after the payment of said allowances and costs expended by said guardian, that all the funds remaining in the hands of the guardian be delivered and paid to petitioner, Robert B. Miller, upon his receipt given therefore."

■ At the outset, we are confronted with the question as to whether or not the wife was properly represented at the divorce hearing. Rem. Rev. Stat., § 188 [P.P.C. § 3-33], provides for the appointment of a guardian *ad litem* for an insane person who is a party to an action.

In *Rupe v. Robison,* 139 Wash. 592, 247 Pac. 954, 47 A. L. R. 565, the husband was the general guardian of his insane wife. He sued for a divorce and asked that a guardian *ad litem* be appointed to represent her at the hearing. A guardian *ad litem* was appointed, filed his answer, and appeared in contest of the proceedings. The husband was granted a divorce and was awarded all of the property of the parties. Certain of this property was sold by the husband to the plaintiff under a contract of sale. Suit was instituted to set aside the conveyance on the ground that the husband's failure to resign as the general guardian prior to the trial of the divorce action, constituted a cloud on the title to the property. We held:

"The appointment of a general guardian for an insane person does not prevent the appointment of a guardian *ad litem* by the court whenever it sees fit, for § 1581, Rem. Comp. Stat. [P. C. § 9913], provides:

" 'Nothing contained in this chapter shall affect or impair the power of any court to appoint a guardian to defend the interests of any minor, insane or mentally incompetent person interested in any suit or matter pending therein, or to commence and prosecute any suit on his behalf.' . . .

"Investigation of the authorities discloses no well-reasoned case where it has been held that a husband, while general guardian of his insane wife, cannot maintain an action for divorce, if a guardian *ad litem* is appointed to represent her interests. The insane wife, having been represented upon the trial of this action by a guardian *ad litem* appointed for the express purpose of contesting the proceedings, and who, for the purpose of the litigation, had full power on her behalf to take an adverse position to that of the general guardian, with full and complete charge of all the questions involved, including that of the marital relation, the property of the parties, and all rights incident thereto, it clearly appears that the general guardian could not, in any sense, have acted for or on behalf of the wife in the divorce proceedings, and that a judgment rendered against her therein is valid."

Here, the wife had not formally been declared insane nor committed to an institution. She was merely being cared for in a private rest home. However, before the divorce hearing, the husband filed a petition apprising the court of her mental condition and asking for the appointment of a guardian *ad litem* to represent her at the hearing. The court appointed a guardian *ad litem,* who filed an answer to the divorce complaint and appeared for her at the hearing. We are satisfied, therefore, that the wife was properly represented and her interests protected.

Our next problem is whether or not there was a final disposition made of the property of the parties at the time of the divorce hearing. Rem. Rev. Stat. (Sup.), § 988 [P.P.C. § 23-15], provides that, in granting a divorce, the interlocutory order as to the custody, management, and division of property shall be final and conclusive upon the parties, subject only to the right of appeal. It has been held by this

court, in construing this statute, that the court cannot retain jurisdiction to make a subsequent order concerning such disposition of the property.

In *Brown v. Brown,* 192 Wash. 333, 73 P. (2d) 795, the trial court determined that all of the property of the parties belonged to the community, awarded certain of the property to the husband "until the further order of this court," and directed him to keep books on all the transactions connected therewith, so that the court, at the time of the signing of the final decree, might make proper disposition of it. In reversing the interlocutory order, we held that, in an action for a divorce, the interlocutory order must dispose of the property rights of the parties, and that this matter cannot be reserved and be determined by the final decree.

In *Lavigne v. Hughes,* 199 Wash. 285, 91 P. (2d) 560, we held:

"Under the provisions of Rem. Rev. Stat., § 988 [P. C. § 7507], the interlocutory decree in a divorce case should dispose of the property rights of the parties, and such a decree is final, subject to the right of appeal. *Brown v. Brown,* 192 Wash. 333, 73 P. (2d) 795.

"If it is not disposed of in the interlocutory decree, the title to the community property vests in the former owners of the property as tenants in common."

In *Ford v. Ford,* 22 Wn. (2d) 303, 155 P. (2d) 485, the interlocutory order provided:

" 'It is further ordered and adjudged that the court hereby reserves for a period of six months the jurisdiction on its own motion to alter the provisions of the property settlement agreement . . .' "

We there held:

"The court's power over property rights of parties to a divorce action derives from Rem. Rev. Stat. (Sup.), § 988 [P. C. § 7507], which provides:

" 'If . . . the court determines that either party, or both, is entitled to a divorce an interlocutory order must be entered accordingly . . .; which order shall also make all necessary provisions as to alimony, costs, care, custody, support and education of children and custody, management and division of property, *which order . . . as to the*

*custody, management and division of property shall be final and conclusive upon the parties subject only to the right of appeal; . . .' "*

See, also, *White v. White,* 24 Wn. (2d) 52, 163 P. (2d) 137; *State ex rel. Gaupseth v. Superior Court,* 24 Wn. (2d) 371, 164 P. (2d) 890.

■ In this case, the trial court did not retain jurisdiction over the property. It awarded the property, all of it, to the husband. No further action could thereafter be taken by the court. The testimony shows that the husband has since remarried and is now living in Spokane. Let us assume that next month, or next year, the wife should regain her sanity. She could immediately force her husband to divide equally with her all property owned by him at that time. If he refused, she could commence an action in Spokane county, or in the county of her then residence, to have the provisions of the interlocutory order enforced. We hold that this was a final disposition of the property rights of the parties.

In this connection, we wish to state that, in our opinion, the trial court and the husband acted in entire good faith. The attorney who had represented the mother of the.wife in prior negotiations, lasting over several months, was present at the trial and acted as attorney for the guardian *ad litem.* The doctor who examined the wife reported to the court that it was very doubtful if she would ever recover her sanity. All of the parties concerned felt that the interlocutory order as made was the best possible solution for her future care and comfort.

When the petition to sell the property was made by the guardian, the property then belonged to the husband. The only interest which the wife had in it was the right to a one half in the event she regained her sanity prior to the consummation of the sale. This, she did not do. The order confirming the sale could have found that, at that time, the property belonged entirely to the husband, and that the wife had no interest in it whatsoever.

■ However, when Dr. Miller attempted to sell the property, he was confronted with the problem that he could

not obtain title insurance, because the title company was of the opinion that the provision in the interlocutory order covering the disposition of the property was invalid. He then petitioned the court for the appointment of a guardian for his former wife. A guardian was appointed, and qualified. The guardian then petitioned for an order to sell the property. The return of sale showed the former wife as owning a half interest. The order confirming the sale recited that the incompetent owned a half interest, and confirmed the sale for $27,500,

". . . or the ward's interest for $13,750, with $5,000.00 down (or the ward's interest—$2,500.00), and the balance at the rate of $250.00 per month, or more (ward's interest being $125.00 per month)."

The order further recited that the ward's interest in the sale was one half of $27,500, or $13,750; and that it appeared from the testimony that the husband was satisfied with the sale and that it was acceptable to him. Then, on March 19, 1945, he and the guardian executed the contract of sale as sellers, and the contract provided that one half of the payments should be made to the guardian and the other half to him, all in compliance with the order of the court in the guardianship proceedings.

From that time on until March, 1946, he acquiesced in the order in every particular and permitted, for a period of one year, one half of the payments to be made to the guardian without protest; and, in addition to that, he permitted one half of the down payment to be made to the guardian. Then, as a result of his changed conditions, he suffered a change of heart and petitioned the court that all of the proceeds of the sale be turned over to him. Because of his acts from the time he learned that the title company would not approve the sale and because of his acquiescence, in every respect, in the order confirming the sale, Dr. Miller has estopped himself from questioning the findings of the court as set out in the order confirming sale.

The decree of the trial court is reversed, and it is directed to enter a decree in conformity with this opinion.

BEALS, C. J., MILLARD, ROBINSON, and JEFFER, JJ., concur.