[No. 32463.    *En Banc.*    March 12, 1954.]

C. R. STOOR *et al., Appellants,* v. THE CITY OF SEATTLE *et al., Respondents.*[1]

[1]Reported in 267 P. (2d) 902.

*Rummens, Griffin & Short* and *Paul R. Cressman,* for appellants.

*A. C. Van Soelen* and *Glen E. Wilson,* for respondents.

MALLERY, J.—Appellants commenced this action to annul an oral civil service examination from which a list was certified of those eligible for promotion from lieutenant to captain in the Seattle fire department.

The duties of a captain in the fire department are delineated in exhibit No. 1, p. 3, "Official Bulletin For Fire Promotional Examinations," as follows:

"Duties: Under general direction of a Battalion Chief, to direct the activities of a fire company; and to perform related work as required.

"Desired Qualifications: Two years' experience as a Lieutenant; high school graduation; good knowledge of Fire Department methods and apparatus; familiarity with fire laws, regulations, general and special fire hazards; *ability to assume full responsibility for the personnel and equipment of his company; initiative; supervisory ability, including ability to train, instruct and organize.*" (Italics ours.)

The civil service commission, believing that the qualities italicized above could not be ascertained by the written examination, found it necessary to give an oral one too.

Appellants are lieutenants in the Seattle fire department. They took the oral examination and received grades that were unsatisfactory to them. No complaint is made as to their grades in the written part of the examination.

The oral examination consisted of a group performance test. One or two problems were given to a group of six or seven applicants, who were allowed a limited time to study the problems and make notes. They then entered the examination room and were seated at a conference table, where they commenced a discussion of the problems in the presence of three examiners, who asked them no questions. The conference lasted forty-two minutes. The examiners graded the applicants on the following qualifications: voice

and speech, ability to present ideas, comprehension of problems, judgment, emotional stability, self-confidence, diplomacy, co-operation, and over-all estimate of value. The examiners were prominent business people in Seattle and not members of the commission.

Appellants contend that the oral part of the examination violates Art. XVI, § 10, of the charter of the city of Seattle, which provides, in part:

"The Commission shall by its rules provide, that whenever possible vacancies shall be filled by promotion; on the basis of service credit and standing upon *written competitive examination, except where tests of manual or professional skill are necessary.* The examination questions shall be such as to best determine the practical and technical qualification of the applicants to perform the duties of the position to be filled. . . ." (Italics ours.)

Appellants argue that the oral examination was (1) not written, (2) not competitive, and (3) inept.

■ (1) Appellants contend that, under the purview of the charter provision set out above, an examination for captain of the fire department must be written because that position is not a profession. Appellants contend that leadership, administrative ability, diplomacy, judgment, emotional stability, and the like, are not qualities of *professional skills*, regardless of whether or not they can be discovered by a written examination, and, hence, the charter does not permit an oral examination to discover them.

We agree that only when it is necessary to discover a *professional skill* is an oral examination permissible under the charter. We do not agree with appellants' contention that the vocation of a captain of the fire department is not a profession in the sense in which the word is used in the charter. Appellants, in their brief, have set out definitions of the word "profession" from Webster's New International Dictionary (2d ed.). We quote the following part of the definitions:

" '4a. . . . a calling in which one professes to have acquired some special knowledge used by way either of instruction [*sic*], guiding or advising others or of serving them in some art; . . .

" 'Syn.—Trained; skilled, expert, . . .
" 'Ant.—Lay, unprofessional; unskilled; amateur.' "

We think that the context in which the words "professional skill" are used in the charter, clearly indicates that it refers to a position, vocation, or employment which requires education, training, experience, ability, and personality characteristics of a specialized nature not possessed by persons generally.

The trial court made the following finding of fact, which we hold is supported by the record:

" . . . That said test was designed to test the professional skill of plaintiffs and other applicants who took said examination, particularly as to their capacity and ability to assume full responsibility for the personnel and equipment of a fire company, initiative, and supervisory ability including the ability to train, instruct and organize, qualities which cannot readily be determined by written examination. . . . "

We hold that a captaincy in the fire department is a profession, and that the charter of the city of Seattle permits an oral examination to discover certain qualifications for it.

■ (2) Appellants contend that the oral examination was not competitive. They rely upon the rule announced in *Fink v. Finegan*, 270 N. Y. 356, 1 N. E. (2d) 462, which is as follows:

"A test or examination, to be competitive, must employ an objective standard or measure. Where the standard or measure is wholly subjective to the examiners it differs in effect in no respect from an uncontrolled opinion of the examiners and cannot be termed competitive. . . .

"An examination cannot be classed as competitive unless it conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience."

Obviously, no oral examination can meet this test of objectivity and opportunity for review. This question of what constitutes a competitive examination is one of first instance in this state.

In *Almassy v. Los Angeles County Civil Service Comm.*, 34 Cal. (2d) 387, 210 P. (2d) 503, it is said:

"So pertinent is the following language in the case of *State ex rel. King v. Emmons*, 128 Ohio 216 [190 N. E. 468, at page 471], where a similar requirement contained in the state constitution with reference to the Ohio civil service law was before the court for interpretation: 'What, then, is meant by "competitive examination"? In a competitive examination, the candidates match their qualifications each against the others, and the final determination is made by rating and comparison. It is open to all who are eligible. In contrast, a noncompetitive examination is one in which the examining authority selects at pleasure such candidates as he may choose and subjects them to examination as he deems necessary.' (See Words and Phrases (Perm. Ed.), vol. 8, pp. 253-254.) Consistent with these observations, the candidates for the positions here in question were all tested by oral interviews for the same personality factors—each candidate was pitting his personality traits against those of every other candidate incident to the examiner's process of making comparative evaluations—so that the ratings in consequence of such 'open' contest may properly be said to rest on a competitive basis."

We prefer the logic of the *Almassy* case, *supra*, to that of the *Fink* case, *supra*, and, accordingly, hold that the test given was competitive within the purview of the charter.

■■ (3) Appellants contend that the oral examination was inept because the candidates were graded upon the subjective impressions made upon the examiners by admittedly intangible qualities; that "total personality" cannot be judged within the forty-two minutes allotted for the examination; and that these qualities can be better evaluated by observations of actual performance on the job by a person's qualified superior rather than under simulated conditions for a brief moment by a stranger with no experience in the fire department. These are matters of opinion, and, as such, might well have some appeal if directed to the commission.

The commission has a wide discretion in the examination of applicants with regard to the manner of performing its duties and exercising its powers. *State ex rel. Hearty v. Mullin*, 198 Wash. 99, 87 P. (2d) 280.

In discussing the discretionary powers of the commission in job classification, we said in *State ex rel. Reilly v. Civil Service Comm. of the City of Spokane*, 8 Wn. (2d) 498, 112 P. (2d) 987, 134 A. L. R. 1100, the following:

"Again, in *State ex rel. Farmer v. Austin*, 186 Wash. 577, 59 P. (2d) 379, we stated:

" 'Courts will not by mandamus attempt to control the discretion of subordinate bodies acting within the limits of discretion vested in them by law. Where courts do interfere, it is upon the theory that the action is so capricious and arbitrary as to evidence a total failure to exercise discretion and is, therefore, not a valid act.'

"Our search of the authorities makes it clear to us that civil service commissions come within this rule and have a discretionary power in the matter of classification."

See, also, *Adams v. Seattle*, 31 Wn. (2d) 147, 195 P. (2d) 634; 3 McQuillin, Municipal Corporations (3d ed.) 303, § 12.78.

We do not think the civil service commission of the city of Seattle was guilty herein of actions so "capricious and arbitrary as to evidence total failure to exercise discretion."

The judgment is affirmed.

SCHWELLENBACH, HILL, HAMLEY, FINLEY, and OLSON, JJ., concur.

WEAVER, J. (dissenting)—I dissent upon the ground that the "group performance" test, as used in this case, is beyond the scope of competitive examinations authorized by article XVI, § 10, of the Seattle city charter, which provides, in part:

"The Commission shall by its rules provide, that whenever possible vacancies shall be filled by promotion; on the basis of service credit and standing upon written competitive examination, *except where tests of manual or professional skill are necessary.* . . ." (Italics mine.)

I agree with that portion of the majority opinion which states

". . . that only when it is necessary to discover a *professional skill* is an oral examination permissible under the charter."

Those taking part in the oral "group performance" test, under survey in this case, were graded upon voice and speech, ability to present ideas, comprehension of problems, judgment, emotional stability, self-confidence, diplomacy, and co-operation. These are intangible qualities of personality. They vary with each individual. They are no more an attribute of "professional skill" of a fireman than they are an attribute of a successful "pitch" man at a carnival. While these characteristics might well be considered by the appointive power in making appointments and promotions, they are not "professional skills" upon which a grade can be given in establishing civil service ratings.

In addition, the "group performance" test was inept and noncompetitive.

In a written examination, the grade can be reviewed without reviewing the grader or examiner. On a test of "professional skill" (oral or written), the grade can be compared with an accepted professional standard. In this "group performance" examination, however, the grade cannot be reviewed without reviewing the grader or observer, for they were instructed:

"Each man as he appears before you is measured against *your ideal* employee.

"Each rater [observer] should have clearly in mind what *he thinks* these qualities mean." (Italics mine.)

There was no accepted norm, other than the thoughts and experiences of the examiners (which probably varied as much as the characteristics of those being observed), by which the results could be tested. The impressions, conclusions, and recommendations of the observers might be most helpful when making appointments; but they are, to my mind, outside the realm of the oral examinations authorized by the city charter.

I share the same judicial reluctance, found in many of the decided cases, to interfere with the orderly process of civil service as established by any legislative authority; but, in the instant case, I feel that the procedure adopted has

gone beyond the charter provisions by which the system was established for the city.

The judgment should be reversed.

GRADY, C. J., and DONWORTH, J., concur with WEAVER, J.